# Cases

DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## July, 1889.

---

In the Matter of the Application of the DEPARTMENT OF PUBLIC PARKS, for and on Behalf of the Mayor, etc., Relative to Acquiring Title to Certain Lands, etc., for Public Parks and Parkways, under the Provisions of Chapter 522 of the Laws of 1884.

*Chapter 522 of 1884, as amended by chapter 421 of 1888, laying out parks in New York city — lands are to be valued as of the time of the passage of the act — title is vested in the city when the value is determined — interest or taxes paid not allowed — new proofs cannot be received by the General Term — awards must be made for streets in the city of New York — not for roads in Westchester county — commissioners are not bound by the evidence of experts — in case of a failure to prove title a substantial award must be made to unknown owners — no separate award for the loss of a water-power and none for loss of an established business, or for machinery — commissioners may receive evidence as to the value of lands for any purpose to which it can be devoted — mapping out of lots does not make them city lots — failure to file objections does not preclude the consideration of allegations against the report — exclusion of evidence as to what the owner had paid, and what* bona fide *offers he had received for the land — City Island and Pelham bridges.*

Upon the hearing of a motion to confirm the report of commissioners appointed to appraise the value of the lands described in chapter 522 of 1884, entitled "An act laying out public places and parks and parkways in the twenty-third and twenty-fourth wards of the city of New York, and in the adjacent district in Westchester county, and authorizing the taking of the lands for the same," it was claimed that the commissioners had erred in appraising the value of the lands taken, as of June, 1884, the date of the passage of the act by which the lands, the value of which they were appointed to ascertain, were condemned and appropriated for the public use, and it was claimed that the lands should have been appraised at their value at the time when the appraisal was made.

*Held,* that the cases in this State, which have held that the value to be taken by the commissioners in making their awards was that existing at the time of the report, were cases in which the land was not to be taken immediately, and to be paid for as soon as its value could be ascertained; the distinction being that when the land is to be immediately applied to the public use, condemnation following upon the location, a different rule is applied from that applicable to those cases in which there is no immediate intention of acquiring the title.

*Matter of Bloomingdale Square,* referred to in *Matter of Wall Street* (17 Barb., 639); *Matter of Furman Street* (17 Wend., 649); *Matter of Commissioners of Washington Park* (56 N. Y., 144) and *Matter of Military Parade Ground* (60 id., 319) distinguished.

*Matter of Munson* (29 Hun, 325); *Matter of Application of Mayor, etc., to Acquire Title to Certain Land for Public Parks* (99 N. Y., 569, 580); *Burt* v. *Merchants' Insurance Company* (115 Mass., 1) followed.

That the owners were not entitled to interest upon the awards.

*Hamersley* v. *Mayor* (56 N. Y., 533) followed.

That the same principle was applicable to the question of taxes assessed upon the property during the time during which the owners had been in possession, as the owners, having had the use and occupation of the property, and having derived the profits therefrom, were bound to keep down the annual taxes and incumbrances upon the property which were assessed thereon during the period of their occupation.

It was claimed by some of the objectors that the General Term was bound to receive new proofs upon the hearing of the application for the confirmation of the report.

*Held,* that it was clearly not the intention of the legislature that the General Term should be required to take the evidence upon which these valuations were fixed; that commissioners having been appointed, and due notice of such appointment having been given and the owners having appeared, or having had had an opportunity to appear, before the commissioners, the intention was that the allegations against the report should be heard at the General Term upon the evidence taken before the commissioners and the arguments naturally deducible therefrom.

That, although the owners were, by the terms of the statute, afforded two opportunities to be heard, this by no means necessarily implied that they were to be offered two opportunities to offer evidence.

That orderly procedure required that the question of confirmation by the General Term should come up on the record made before the commissioners, as it was their action which was to be adjudicated upon.

That the commissioners erred in not making substantial awards for those streets which were within the city of New York and were embraced within the limits of the proposed parks, for the reason that the department of parks in the laying out of the parks might, for anything that appeared to the contrary, close those streets and thus deprive the property, which had now, in some cases, a frontage upon such streets, of the advantage of such frontage, and the property within the street would thus be devoted to a new, different and distinct use from that to which it had been subjected.

That the rights of the persons to whom the awards should be made, in the various cases in which objections had been filed on this ground, depended upon whether the fee of the roadbed was in the abutting owner or in some original grantor, and were necessarily qualified in those cases, where the fee was in such original grantor, by the rights of the abutting owner to an easement over the street in question.

That in case the commissioners should be unable to determine to whom awards of this kind should be made, the award for the value of the land taken should be made to unknown owners.

That this rule, in reference to awards for the land embraced within public highways did not apply to the roads that were within the county of Westchester, for the reason that the act, as amended by chapter 421 of 1888, provided, as to highways in that county, that they should be maintained as they then existed, and, consequently, the department of parks had no right to devote such highways as were situated within the county of Westchester to any other or different use from that to which they had been heretofore appropriated.

An objection was taken to the amount of an award for a certain plot known as 712.

*Held*, that, although there might be an apparent discrepancy, between the award and the evidence, in regard to value, the commissioners were not bound by the evidence of experts, but had a right to take into consideration what they could learn from viewing the premises in question, and that the court could not say that their valuation was so grossly inequitable as to justify the sending back of that portion of the award for revision.

It appeared that the commissioners had failed to make a substantial award for land owned by Mary A. Blizzard, because of the failure of proof of title to the property in question.

*Held*, that the fact that the objector failed to make title did not authorize the commissioners to make a nominal award, that they should in a case where they were not satisfied that the claimant was the owner, have made a substantial award for the land in question to unknown owners.

That the commissioners had no power to make an award for the loss of an established business or for the difference in value between machinery as in use and occupation upon the premises and such machinery if moved to another manufactory.

It was further objected that no award appeared to be made for the value of a water-power and none for the lands under the water of the Bronx river, the commissioners confining their award to the upland measurement.

*Held*, that no award for the water-power, separate from the land, could be made, as the water-power was a mere appurtenance of the upland, and was included in the award therefor; and that no award was proper for the land under water, in the absence of evidence that the claimants derived any benefit from the land under the water of the Bronx river, except such as was embraced in the water-power.

It was further urged that the commissioners erred in receiving and acting upon testimony calling for the value of the property for farm purposes or for villa sites.

*Held*, that the commissioners were entitled to receive evidence as to the value of the property for any purposes to which it could be devoted.

It was claimed that the commissioners treated a portion of the property taken as farm lands, to be valued accordingly, instead of treating it, as it was claimed that the proof showed that the premises should have been treated, as city lots.

*Held*, that the mere fact that this property was mapped out into lots and that streets, so-called, were laid down upon the map, did not require the commissioners to consider this property as consisting of city lots.

A claim was made that an award should have been made for the destruction of a milk business.

*Held*, that it was not well taken; that the commissioners only had the right to consider the value of the land and the improvements thereon, and that the fact that the property had been devoted to a special purpose, which to the owner made it peculiarly valuable, did not authorize an allowance of compensation to be made upon that basis.

It appeared that the commissioners excluded evidence offered by one of the owners, to show what he had paid for the land, what he had done with it since, and what *bona fide* offers for the land he had had.

*Held*, that the evidence should have been received and considered by the commissioners, with other evidence offered tending to show whether there had been an appreciation or depreciation in the land in question.

It was urged by some of the parties interested in these awards that the city, not having filed objections to the report, could not be heard in opposition to the awards which had been made.

*Held*, that the act under which these proceedings took place did not preclude the consideration of objections made to the report, at the time of its confirmation, merely because no objections had been filed with the commissioners.

A further objection was raised by the city as to an award made for the City Island bridge.

*Held*, that the award for the City Island bridge was erroneous, as it was not, in fact, embraced within the limits of the park, and that, by the interpretation placed upon the act of 1884 by chapter 421 of 1888, this bridge was especially exempted.

The city also objected to an award for Pelham bridge.

*Held*, that the award for Pelham bridge was also erroneous, as Pelham bridge was a part of the highway system of Westchester county, and by the act of 1888 the park commissioners were bound to maintain that bridge for the use of the public.

That the county of Westchester had no property in these roads, and as they were to be devoted to the same purpose as heretofore the town of Westchester sustained no damages whatever by reason of this bridge being taken by the park commissioners.

MOTION to confirm a report of the commissioners of estimate, who were appointed by the General Term of the first judicial department in October, 1884.

The sessions of the board commenced on December 30, 1884, and

from that time until June 9, 1888, the commissioners continued to hear the evidence, and on the 23d day of October, 1888, they submitted their corrected report to the General Term. Most of the awards were confirmed, without objection, by order of the General Term, entered on the 12th day of December, 1888, and since then eleven of the protesting owners have withdrawn their objections.

*Franklin Bartlett,* for motion.

*Thomas Allison,* for Beal Improvement Company.

*C. H. Knox,* for Chas. S. Wood.

*A. Tham,* for Bolton Estate.

*L. L. Kellogg,* for J. H. Byron.

*Bourke Cochran,* for M. F. Redmond.

*S. H. Valentine,* for Estate of Valentine.

*J. A. Davenport,* for Gouverneur Morris.

*Hugh Stevenson,* for Caryll and another.

*C. H. Roosevelt,* for Westchester County.

*W. R. Lamberton,* for Town of Pelham.

*J. C. Shaw,* for Tier Estate.

*M. J. Keogh,* for A. C. Chandler.

*Fordham Morris,* for small owners.

*P. H. Butler,* for Lydig Estate.

VAN BRUNT, P. J.:

There are three general questions which are raised by all the opponents to the form of the report of the commissioners as it stands. It will be advisable to consider these general objections before we pass to the consideration of questions raised in opposition to such confirmation, peculiar to each individual objector.

The general questions referred to are that the commissioners erred in appraising the value of the lands taken as of June, 1884,

the date of the passage of the act by which the land, the value of which they were appointed to ascertain, was condemned and appropriated for the public use. Another of such objections is that if the commissioners assessed the value of the land of the last named date, the owners of the land, although in possession of the same and receiving the rents and profits thereof, should have been allowed interest upon the award from said date up to the time of the payment of the amount awarded, and should also be allowed for the taxes paid during this period. And, further, that the General Term is bound to receive new proofs upon the hearing of the application for the confirmation of the report.

In support of the objection first above named our attention has been called to various cases which have been heretofore decided as authoritative upon this point, namely: *The Matter of Bloomingdale Square*, referred to in *Matter of Wall Street* (17 Barb., 639); *Matter of Furman Street* (17 Wend., 649); *Matter of Commissioners of Washington Park* (56 N. Y., 144); and *Matter of Military Parade Ground* (60 id., 319). An examination of these cases shows, however, that where the courts of this State have held that the value at the time of the report is to be taken by the commissioners in making their awards, the land was not to be taken immediately and paid 'for as soon as its value could be ascertained, the distinction being that when the land is to be immediately applied to the public use, condemnation following upon location, a different rule is applied than in those cases where there is no immediate intention of acquiring the title. The reason for the distinction is apparent, as in the one case the owner is to receive compensation for the land as soon after location as such value can be ascertained, and in the other no immediate intention exists of ascertaining such value and placing the owner in possession of the value of his land.

In the consideration of this question it seems only necessary to refer to the opinion of the General Term rendered *In the Matter of Munson* (29 Hun, 325). The question involved before the court under the act now under consideration is so nearly identical with that which was then under consideration that a mere statement of the position of the owners in each case seems all that is necessary to make the reasoning of the opinion of the court in that case entirely

applicable to the one at bar. In the Munson case the act of the legislature setting in motion the machinery for the purpose of acquiring title to land above Fifty-ninth street in the city of New York for a parade ground, provided that certain officers of the state and city of New York should have and possess the power to lay out and establish such parade ground in that part of the city of New York above Fifty-ninth street. The act further provided that the officers composing this board, or a majority of them, should cause a map, plan or survey to be made showing the location and extent of the public square or place authorized by this act, and that one copy of said map should be filed to remain on record in the office of the department of public parks, and one other copy in the office of the department of public works in said city; and that from and after the time of filing said maps the said public square should be one of the public places and squares in said city, etc. The filing of this map was the first designation under the authority of the legislature of the particular property to be appropriated to this public use. In the act now under consideration the legislature locates by metes and bounds the lands to be taken for the public use, and the lands so taken are by the acts themselves declared to be public places and public parks for public uses and public purposes.

Therefore, in the act under consideration, the legislature did that which in the matter of the parade ground was done by the filing of the map, namely, located the lands to be taken for the public improvement; and to show that the intention of the legislature was that immediate action should be taken, and that the title to this land should be acquired as soon as its value could be ascertained in the orderly procedure for the ascertainment of the value of lands for public uses, the mayor, alderman and commonalty, by and through the department of public parks, were, by the terms of the act, required to make application at the next General Term of the Supreme Court, in the first department, to be held after the act should take effect, for the appointment of commissioners of assessment, which commissioners were directed to report to the court without unnecessary delay, thus indicating that no time should be allowed to elapse, but that proceedings for the acquirement of title to the property should be at once initiated and prosecuted with diligence to their complete determination.

It is true that the provision of the act is that, upon the filing and confirmation of the report, the mayor etc., should take and be seized of all the lands laid out for said parks and parkways. But this was also the provision in the statute in reference to the parade ground which has heretofore been referred to, and in no way affects the question as to the time from which this value is to be determined. It would be impossible for the city to acquire the actual title of these premises included within the bounds contained in the act, until the determination of the value, and means had been provided for its payment, and, therefore, the provision is that the city shall acquire the title upon the confirmation of the report when the value has been determined and the proceeding is terminated.

This is precisely what was held in *Matter of Munson*, and we cannot do better than incorporate in this opinion what was so well said by the court upon the determination of that appeal upon this subject:

"We have carefully considered this question, and in our judgment it was the value of the property at the time of the filing of the map which would have governed in the making of the award.

"The taking of the city under the right of eminent domain clearly related back to the laying out of the improvement. In fact, as we have already seen, the act provided that 'from and after the time of filing of said maps the said public place or square and the streets and avenues so laid out, if any, bounding the same shall become and be one of the public places or squares and public streets and avenues of said city.' (Laws 1871, chap. 628, § 2.) It is true that property owners were not absolutely divested of the fee until the confirmation of the assessment under proceedings to acquire title, but the real taking was none the less upon the filing of the map. The hand of the law was then placed upon the property. From that moment it was impounded for the public use. The owner might, of course, use the property until formally divested of his title, but he could make no improvements for which compensation would be afforded, and even his use would be hampered by the uncertainty as to the moment of actual dispossession. The only reason why the title did not at once vest in the city was because of the delay in making just compensation, necessitated by the forms of law. If the property owner is to suffer from depreciation pending the proceedings to

settle his compensation, so must the city from appreciation. And with what show of justice could the property owner claim the increased value caused perhaps by the very improvements for which the property was taken?" (See *Giesy* v. *C. W. and Z. R. R. Co.*, 4 Ohio St., 308, 322.)

The authorities, too, support this principle. Those in this State, which are cited by the learned counsel for the objectors, are not in point. We refer to the following: *Matter of Albany Street* (11 Wend., 153); *Wyman* v. *The Mayor* (id., 486); *Matter of Furman Street* (17 id., 649); *Matter of William and Anthony Streets* (19 id., 678); *Matter of John and Cherry Streets* (id., 659). In none of these did the question arise with respect to a special improvement in the immediate present, and there is nothing in even the isolated and incidental remarks which have been quoted in the brief to support the proposition that "just compensation" in a case like this (had the proceeding gone through) would have been "the market value of the lands at the time the commissioners of estimate and assessment made their report.

"A mere outline of future improvements of a general character, having reference to the growth and ultimate needs of a great city, whatever form it may take, stands upon an entirely different footing.

"Take, for instance, the case of *Bloomingdale Square*, referred to in the *Matter of Widening Wall Street* (17 Barb., 639). It was there contended that the owners of the square were only to have the value of the lands (with interest) as of the year 1807, when the act for laying out the city was passed, or as of the year 1811, at the latest, when the map laying out the plan of the city was filed. But the court very properly held (upwards of forty years having elapsed from the filing of the map) that the owner was to have the enhanced value which his property had derived from the permanent plan and settlement of the city. The same rule would naturally apply to the opening of streets and avenues from time to time (under a general system) as the development and progress of the city require. There, neither the system nor the procedure for 'laying out' under it has any direct or immediate bearing upon the property formally condemned. It is only when proceedings to open streets and to acquire title thereto are actually begun that any perceptible influence upon value is apparent. Up to that moment the question of

appreciation or depreciation is in the domain of natural conditions. But these considerations do not apply to a special improvement justified (in the legislative wisdom) by present needs, and calling for speedy development.   But while no case in this State directly in point has been cited, the authorities in other States seem to be clear and explicit in favor of the doctrine that the market value at the time of the location of the improvement should govern.  ( *Whitman* v. *Boston and Maine R. R.*, 7 Allen, 326 ; *Edmands* v. *City of Boston*, 108 Mass., 535 ; *Hampden Paint and Chemical Co.* v. *S. A. and N. R. R. Co.*, 124 id., 119 ; *Old Colony R. R. Co.* v. *Miller*, 125 id., 3 ; *Lafayette R. R. Co.* v. *Murdock*, 68 Ind., 137 ; *Bangor and P. R. R. Co.* v. *McComb*, 60 Me., 290 ; *Del., L. and W. Co.* v. *Bunson*, 61 Pa., 309 ; *Parks* v. *City of Boston*, 15 Pick., 198 ; *Dickenson* v. *Fitchburg*, 13 Gray, 546.)   It is true that some of these cases were against private or but *quasi* public corporations.   Others, however, were against municipal or strictly public bodies.   But the same governing principle was laid down in one class as in the other.

"'The filing of the location,' said the court in *Hampden Paint and Chemical Company* v. *Springfield, Athol and Northampton Railway Company*, 'constitutes the taking.'   So in *Whitman* v. *Boston and Maine Railroad Company*, the court observed ; 'in estimating the damages sustained by the petitioners the jury were properly advised to consider the value of the land, and of the easement connected with it at the date of the location, by the respondents of their road over it.'

"In *Old Colony Railroad Company* v. *Miller* the rule was reiterated, damages are assessable as of the time of the location."   The same rule was laid down in the Indiana case, namely, that the damages, if any, should relate to the filing of the act of appropriation.

In *Edmands* v. *The City of Boston* the court upheld the ruling of the court below, that on the apportionment of the damages, as between the owner and his lessee, the latter should be allowed "the market-value of his lease at the time of the passing of the order to take the land, deducting the market-value of the occupation which he actually enjoyed until the land was entered on."   And in *Parks* v. *The City of Boston*, Chief Justice SHAW said : (This proceeding for acquiring the title) ' is not, strictly speaking, an action for dam-

ages, but rather a valuation or appraisement of an incumbrance created on the plaintiffs' estate for the use of the public. It is the purchase of a public easement, the consideration of which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be as in the case of other purchases, that the price is due and ought to be paid at the moment that the purchase is made when credit is not specially agreed on. And if a '*pie poudre*' could be called on the instant and on the spot, the true rule of justice for the public would be to pay the compensation with one hand while they apply the axe with the other; and this rule is departed from only because some time is necessary by the forms of law to conduct the inquiry.'

" The time of the location also governs in assessing the benefit conferred by the improvement upon adjoining lands. (See *Meacham* v. *Fitchburg R. R. Co.*, 4 Cush., 291, 299.)

" It being quite clear, then, that the award would necessarily have been predicated of the market-value of the condemned property at the time of the location, that is, of the filing of the map, there was no basis for speculation. Compensation was not dependent upon subsequent fluctuation. The city's obligation and the owner's rights were, in principle, fixed and settled. Practically, the owner had nothing to transfer, save, as was said in *Spears* v. *Mayor*, (87 N. Y., 359), the 'right to compensation' which was a mere chose in action, a right to the market-value of his land on the 5th day of April, 1873, neither more nor less. And his transferees would have been entitled to precisely the same compensation, neither more nor less. There was nothing then to speculate about, unless it were the bare possibility of the entire abandonment of the improvement and the ultimate freedom of the land from the condemnation proceedings. This was something which neither the owners nor the public had any reason to contemplate, and it would have been the height of absurdity to have offered such a possibility for sale in the real estate market."

In harmony with the views thus expressed is the opinion of the Court of Appeals when this very act was before them for adjudication as to constitutionality, etc. (*Matter of Application of Mayor, etc., to Acquire Title to Certain Lands for Public Parks*, 99 N. Y., 580), and there the rule laid down is that the statute condemned

and appropriated for the public use the precise land selected by metes and bounds, not that the land was to be taken, but that the land was taken by the very act of legislation.  Now, this land being taken, how can the owner be compensated for increase in that which he does not own, although he may have the naked possession of the same, liable to be dispossessed at any moment as soon as the valuation of that which has been taken is determined according to the forms described by law?  And in a very recent case, that of *Burt* v. *Merchants' Insurance Company* (115 Mass., 1), the identical doctrine herein contended for has been reaffirmed by the Supreme Court in Massachusetts.  Mr. Justice GRAY, in his opinion, says: " This is a proceeding for the assessment of damages to the owners of land appropriated to the use of the United States for the enlargement of the post-office in Boston, in accordance with statutes duly passed by Congress and by the legislature of the Commonwealth.  (U. S. Stat., 1873, chap. 227; St. 1873, chap. 189 ; *Burt* v. *Merchants' Insurance Company*, 106 Mass., 356.)  The rights of the government on the one hand, and of the owners of the land on the other, are secured by a provision in the act of congress, that no money appropriated for the purpose shall be expended until a valid title to the land shall be vested in the United States; and by provisions in the statute of Massachusetts, that the title shall vest in the United States only upon payment of the amount of the assessment made by the jury and confirmed by the court, and that until such payment the United States shall not enter into or take possession of the land, or exercise any act of ownership thereon.  By the effect of these provisions the final decision in the case fixes the time when the compensation shall be paid to the owners of the land, and the title shall vest in the United States.  (*Baltimore and Susquehanna Railroad* v. *Nesbit* (10 How., 395.)  But the compensation to be paid by the government and received by the owners of the land must be estimated according to the value of the land at the time of the filing of the petition.  This affords a definite and invariable rule which has relation to the time at which the property is designated and set apart for the public use, the owners ascertained who are entitled to be compensated, and the judicial proceedings instituted for the purpose of determining such compensation, and is not liable to be affected

by the duration of these proceedings, or by increase or diminution in value, whether occasioned by the taking itself or by acts of the owners, lapse of time or other circumstances. In all these respects it is a juster measure of compensation than a valuation of the estate at any subsequent point of time, and it accords with the rule, as settled in this Commonwealth, in the analogous cases of lands taken for highways and railroads."

There seems, therefore, to be no reason to doubt but what the land in question having, by the statute, thus been condemned and appropriated for public use, and the process of estimate for the purpose of ascertaining what was to be paid to the owner being required to be proceeded with immediately, the true rule has been adopted by the commissioners according to the principles established by all the cases cited, and the only rule which can afford a definite and fixed method of valuation in cases of this description. That the owners were not entitled to interest upon the awards nor to an allowance for taxes paid seems also to be settled upon principle and authority. Certainly the rights of the owners of property are not greater under the act of the legislature than they would have been had they contracted with the city for the purchase of the lands in question; and no case can be found where the rule is laid down that the owner, pending a specific performance of a contract of purchase, is to have both the possession of the property, the value of its use and occupation, and interest upon the purchase-price.

In the case of *Hamersley* v. *Mayor* (56 N. Y., 533), the learned court makes use of the following language:

"The plaintiffs, by accepting the award of the commissioners, affirmed the constitutional validity of the statutes under which the proceedings were taken for widening Church street, including the provisions for making compensation to the owners, for lands taken for the improvement. They cannot, after such acceptance, deny that just compensation was provided by these statutes, and their claim to recover interest on the award cannot be sustained unless the right to it is given by the statutes referred to.

"The report of the commissioners of estimate and assessment was confirmed December 31, 1867. By the terms of the act of April 9, 1813 (chap. 86, § 178), the corporation, upon the final confirmation of the report of the commissioners, becomes seized in fee of the lands

mentioned in the report, required for the purposes of the street, and is authorized immediately, or at any time thereafter, to take possession of the same; and by section 183 is required, within four months after such confirmation, to pay the sums awarded by the commissioners, and in case of neglect or default to make such payment, the persons entitled thereto, after application first made to the corporation for payment, are authorized to sue for and recover the award, with interest from the time of the application. The plaintiffs in this case made application for the payment of the award December 7, 1868. This was more than four months after the confirmation of the report; and if the provision in respect to interest contained in this section was in force when the proceedings for widening Church street were taken, the plaintiffs were entitled to interest on the award from that time. The act of 1813 did not provide for the payment of interest on awards for the four months succeeding the confirmation of the report, although, meanwhile, the corporation may take possession of the lands for which awards were made.

"The payment of the awards was deferred, as is apparent from the other provisions of the act, to enable the city to collect, through the machinery of assessments upon the property benefited by the improvement, the means of payment. I perceive no constitutional objection to the provisions deferring the payment of compensation awarded for private property taken for public use, for a time sufficient to enable the State or municipality to collect, by the process of taxation provided in the act, the money required for its payment, although, meanwhile, no interest is allowed, and the public assumes possession. If, however, such an objection would be valid in any case, it does not apply to the act of 1813, for the reason stated by PECKHAM, J., in Detmold v. Drake (46 N. Y., 320), that the authority given to the commissioners is to be construed as authorizing them to estimate the damages and compensation in view of the fact that the period of four months would elapse before payment could be demanded, and that they are presumed to have acted upon this construction of the law.

"The act of 1818 (chap. 206) made a material alteration of the act of 1813, affecting the question in controversy. By the first section the mayor, aldermen and commonalty of New York were authorized

to 'suspend the opening, etc., of any street' ordered to be opened under the act of 1813, for such time or times as they shall think proper, not exceeding fifteen months in the whole, after the confirmation of the report of the commissioners. It further provided that the 'mayor, aldermen and commonalty should not be required to pay any sums of money which may be awarded to any person on account of the opening of any such street, until the expiration of four months after the expiration of the times which may be appointed by them as aforesaid for carrying the said improvements into effect.' * * *

"If the plaintiffs had surrendered possession on the 1st of March, 1869, they would not have been entitled to interest on the awards if paid within four months thereafter, for the reason that this absolute term, during which payment might be deferred, must, within the reasoning in *Detmold* v. *Drake*, be deemed to have been taken into account by the commissioners in making their award. The statute, in effect, substitutes the right of possession during the fifteen months for interest on their award; and while it may not, in all cases, secure to the owner the exact indemnity, it furnishes a rule easy of application, and which, on the whole, may not work injustice."

It will be seen that the decision in the case just cited would seem to control the objection which has been raised, and that the presumptions which were indulged in in the case cited, that because the authority given to the commissioners was to be construed as authorizing them to estimate the damages and compensation, in view of the fact that a certain period would elapse before payment would be made, namely that they had acted upon this construction of the law, is not necessary in the case at bar, because the commissioners have reported especially that they have taken into consideration the fact of the delay in realizing upon the awards which were to be made by them, and have made their estimates accordingly liberal.

The same principle is applicable to the question of taxes assessed upon the property during the time during which the owners have been in possession. They had the use and occupation of the property, and derived the profits therefrom, and, under a very familiar principle of law, were bound to keep down the annual taxes and incumbrances upon the property which were assessed thereon during the period of their enjoyment.

The only remaining objection is as to the duty of the General Term to receive any proofs upon the application for the confirmation of the report. Although the General Term may have authority to receive such proofs, yet, in view of the fact that all the owners have had ample opportunity to present whatever evidence they might have had before the commissioners in respect to their claims as to their property, no duty seems to be imposed upon the court to re-open the case, unless justice shall seem to require it, namely, because the courts are authorized by the provisions of the act, after hearing any matters alleged against such report, to confirm the same or send it back for revision or correction or appoint new commissioners.

It was clearly not the intention of the legislature that the General Term should be required to take the evidence upon which the valuations were fixed, and that where commissioners had been appointed, due notice of which was given, and the owners had appeared or had had opportunity to appear before the commissioners, the intention was that the allegations against the report, which were to be heard by the General Term, were such as should be heard upon the evidence taken before the commissioners and the arguments naturally deducible therefrom.

Although the Court of Appeals said, when this act was under consideration, that by the terms of the act, owners are afforded two opportunities to be heard, this by no means necessarily implies that they are to be offered two opportunities to offer evidence. There is no reason for such a construction. Upon the contrary, orderly procedure requires that the question of confirmation by the General Term should come up on the record made before the commissioners, as it is their action which is being adjudicated upon. This construction is plainly that which was adopted by the court, attention being called to the rule laid down in this proceeding, which assimilates the action of the confirming court to that of an appellate tribunal, and that in proceedings of this kind, where the property owner has an opportunity to be heard before the commissioners, and to present his proof, the court will refuse to hear new affidavits then made for the first time and never presented to the commissioners.

There does not appear, therefore, to be any reason, in view of the principles heretofore laid down in cases of a similar nature, for disturbing the commissioners' report in reference to the general

principles which have guided them in the assessment of values and the making of awards to owners.

We think that the commissioners erred in not making a substantial award for those streets which are within the city of New York and which are embraced within the limits of the proposed parks, for the reason that the department of parks, in the laying out of the parks, might, for all we can see, close those roads and thus deprive the property which has now, in some cases, a frontage upon said roads, of the advantage of such frontage, and the property within the road would thus be devoted to a new, different and distinct use from that to which it was subjected.

It has been held that in those cases where the road-bed of an old road was embraced within the limits of a street about to be opened, a nominal award might be sustained because there was no change of use. This rule, however, does not apply to a case where the road may be devoted generally to park purposes. It may be devoted to uses of which passage is not one, and, consequently, there would be a change in the use to which the road had been dedicated, and the condition by which the road would revert to the original owner would have happened. And, therefore, it would seem that the owners of the road-bed would be entitled to a substantial award for the property which had been taken and embraced within the limits of the road.

This rule, however, does not apply to the roads which are within the county of Westchester, because in 1888 the legislature saw fit to provide as to highways in that county, that they should be maintained as they now exist, and, therefore, the department of parks have no right to devote such highways as are situated within the county of Westchester to any other or different use from that to which they have been heretofore appropriated. This legislation seems also significant in reference to the power of the department of parks, in laying out the parks, to close any road or street within the limits of the parks, and within the boundaries of the city of New York, because, had they not had that right prior to the passage of the act of 1888, the legislature would not have thought it necessary to preserve the highways in Westchester county from the exercise of this power, as they have done by the act in question .

As to the persons to whom the awards should be made in the

various cases in which objections have been filed on this ground, this depends upon whether the fee of the road-bed is in the abutting owner or in some original grantor, and is necessarily governed in those cases where the fee is in some original grantor by the rights of the abutting owner to an easement over the road-bed in question. In case the commissioners should be unable to determine to whom awards of this kind should be made, the award for the value of the land taken should be made to unknown owners. Therefore, the objection raised by the W. R. Beal Land Improvement Company, that a nominal award only was made for plat 711 in St. Mary's Park, seems to be well taken, and this portion of the award should be sent back to the commissioners for revision.

There seems to be no valid reason for disturbing the award as to plat 712. Although there may be an apparent discrepancy between the award and the evidence in regard to value, the commissioners were not bound by the evidence of the experts, but had a right to take into consideration what they could learn from viewing the premises in question, and we cannot say that their valuation was so grossly inequitable as would justify the sending of that portion of the award back for revision.

What has already been said in regard to the nominal award for road-bed governs the objections raised on behalf of the estate of Gouverneur Morris to the awards for parcels 714, 715, 716 and 710.

It is also urged, upon behalf of said, estate that the awards should have been made to Gouverneur Morris, or to his testamentary trustee, instead of to unknown owners. As was intimated upon the argument of this motion, the court will not, upon these proceedings, determine the title to awards which have been made to unknown owners. If the commissioners were uncertain as to who was entitled to the award, it was their duty to make the award in the manner they have done, and upon subsequent proceedings upon proper proof the claimants will have the opportunity to establish their right to the award as the owners of the property, in the place of which the award was intended to stand.

In respect to the objections made on behalf of Mary A. Blizzard, it would seem that the learned commissioners had failed to make a substantial award because of the failure of proof of title to the prop-

erty in question. The parcel No. 691 contains nine hundred and sixty-one one thousandths of an acre, and the commissioners seem to have made only the nominal award of fifty dollars, being at the rate of about fifty-two dollars per acre, while they awarded to other property in the neighborhood from $2,000 to $4,000 per acre. The fact that the objector failed to make title did not authorize the commissioners to make a nominal award. They should, in case they were not satisfied the claimant was the owner, have made a substantial award for the land in question to unknown owners.

There seems also so great a discrepancy in the amount allowed for buildings as to call for some explanation, in that the evidence shows that the buildings were worth between $8,000 and $9,000, and an award was made for $4,500, a little more than half of what the lowest estimate showed to be their value. It is possible that there may be no mistake or injustice in this award; but upon its face it seems to be inequitable, and it should be sent back to the commissioners for revision unless there is some good reason why the valuation should be adhered to.

The objections raised as to the valuation of parcel 142 do not seem to be well taken. Although the award is somewhat less than that of adjacent property, yet the discrepancy is not so great as to call for the intervention of the court.

The nominal award for plot $142\frac{1}{2}$ for the road-bed seems to be improper under the rules laid down, and the report as to that should be sent back for correction in that respect.

In respect to the objections made by the estate of Ann Bolton, none of them seems to have been well taken. They are, first, that no award was made to the claimants for the loss of an established business. It is clear that the commissioners had no power to make an award for any such purpose. And, secondly, that no award was made for the difference in value between the machinery as in use and occupation upon the premises, and such machinery if moved to another manufactory. It is clear that the commissioners have made an allowance for the depreciation in value of the machinery by removal, and that they would have no authority whatever to make an award for the machinery as such, it being personal property.

The further objection is made that no award appears to be made for the value of the water-power, and none for lands under the water

of the Bronx river, the commissioners confining themselves solely to the upland measurement. The claim as to the value of the water-power seems to be based upon an entirely erroneous principle. No award for the water-power, separate from the land, could possibly be made, as the power was a mere adjunct and appurtenance of the land, and is included in the award therefor. As to the land under water of the Bronx river, the value seems to be quite problematic, as its sole purpose seems to be to support the waters of a flowing stream, and there is no evidence whatever that it could be devoted to any other purpose; and as it has always been devoted to that purpose, there is every indication that it will so continue. There is no evidence that the claimants have derived any benefit from such use, except such as is embraced in the water-power, and consequently there is no element of damage to be considered.

It is further urged that the commissioners erred in receiving and acting upon testimony calling for the value of the property for park purposes or villa sites. The commissioners were entitled to receive evidence as to the value of the property for any purposes to which it could be devoted; and they did receive all such testimony as was offered, and having weighed this testimony they have made their award, and it does not appear that they have refused to consider any evidence which was offered in reference to such value.

The other objections raised have already been considered, and it does not appear but what a fair and reasonable award has been made by the commissioners for the buildings upon the property, and there seems to be no reason for sustaining any of the objections raised.

The award made to John H. Byron, when compared to awards for property somewhat similar, seems to be unjust. It may be that some explanation of this award may be given which will show that the amount awarded is proper and a true compensation to the owner, but, as it appears upon the report, the difference in valuation given to this property, and to other property situated in the immediate vicinity, is so great as to call at least for explanation, and perhaps for the correction of the award. Mr. Byron was the owner of twenty-one lots, fourteen of which were situated on Bishop avenue and Second and Third streets. Award for these lots was made at the rate of $200 a lot, while for two lots at the corner of Third street and Pelham bridge road awards of $1,000 each are made,.

and for two lots at the other corner of Third street and Pelham bridge road $950 was awarded for each lot. We cannot see any reason for such difference. It is true that the testimony shows that Byron's property was rough. But this does not explain the great disparity in the valuation; and the report should be sent back for further consideration and explanation of this award, if such explanation can be given.

The awards made to Michael Hogan, Martha A. Secord and John Ward, in view of awards made for adjacent property, seem to be inequitable, and the report should be sent back for reconsideration and explanation.

Objections are also presented by Simon Cribbins and Margaret F. Redmond. It is claimed that the commissioners erroneously treated this property as farm lands, to be valued accordingly, instead of treating it according to the facts and the proof, and that the premises should have been treated as city lots, and not as farm lands. The mere fact that this property was mapped out into lots and so-called streets laid down upon the map, and nowhere else, did not require the commissioners to consider this property as lots; and it seems to be entirely immaterial whether they should be considered as lots or farm lands. The purposes to which they were devoted was the question which probably determined the matter in the minds of the commissioners, and with this determination we cannot interfere.

The commissioners erred, however, as has already been said, in awarding only nominal damages for the supposititious streets which had been laid down through this property. So far, therefore, as the nominal award for lot 109½ is concerned the report should be sent back in order that a substantial award may be made for the road-bed which has been taken. As to the award to Sarah A. Redmond, if the facts be as stated by the objector, that the award is made out to Sarah A. Redmond, who was dead when it was made, then the report may be corrected by the commissioners in this respect. But there does not seem to be any other ground for interfering with this award. There is no such discrepancy as would justify the interference of the court. The claim that an award should have been made for the destruction of the milk business does not seem to be well taken. The commissioners only had the right to consider the value of the land and the improvements thereon. Merely because

the property has been devoted to a special purpose, which to the owner makes it peculiarly valuable, does not authorize compensation upon that basis. It may be a hardship to the owner, and undoubtedly is, but it is one of those incidents in life which must be sustained and made the best of. The commissioners could not go into the domain of speculation in assessing damages to a business which might be terminated at any moment. For the purposes of correction as to the person entitled to the award, the report should be sent back.

In respect to the objection presented by the estate of Samuel M. Valentine, deceased, we have not been able to find from the report that there was any such gross inequality in value as would justify us interfering with the award. It may be that this was the most valuable plat of land in Westchester county, and it is probable that the owner supposes the award to be entirely inadequate. But there fails to be disclosed upon the record evidence that there was such a gross inequality of value as would justify the interference of the court, and the objection must be overruled. The same may be said in regard to the objections filed by the estate of Philip Schuyler. The discrepancies claimed by the objector are not large compared with the amount of the award, and it may be that an inspection of the property would clearly justify the action of the commissioners.

The objection of Catharine Scally, that mere nominal awards were made to her for roads embraced within her property, as already shown, seems to have been well taken, and the report as to parcels 400¼ and 400½ in the Bronx park, within the city of New York, should be sent back for correction.

An examination of the objections filed by Michael Reilly and Patrick Lynch, as to parcels 242, 254 and 235, on the map of Mosholn Parkway, does not seem to present any facts which call upon the court to set aside the award. It appeared that the award is less than the property cost the claimants. But this forms no ground for interfering with the award. None of the objections taken on behalf of Jeremiah Tier, Daniel Tier, Adeline P. Law and E. A. Johnson, seem to be well taken. There is no evidence but what a reasonably correct valuation of this property, as of 1884, was reached by the commissioners, and, in respect of the valuation of buildings, it appears that some of them were put upon the

premises subsequent to the time the land was appropriated for public use, and the commissioners were correct in not making any allowance in reference thereto. All the other objections raised by the elaborate points presented on behalf of these objectors have already been considered and disposed of.

In reference to the objection filed on behalf of Jefferson M. Levy, we have been unable to see, from the examination of the evidence, any such inequality in the awards as would justify us in setting aside the report of the commissioners in that respect. The comparison with the award made to Mr. Chandler is of little avail, because this award seems to be extraordinarily large, and can hardly form the basis for comparison of valuations. The other points raised have already been considered and disposed of. We see no reason for interfering with the valuation placed by the commissioners upon lands owned by Mr. Mahoney. It seems to be large compared to the valuation of other lands in the vicinity. Lots 106, 107, 108, 109, 110, 111 and 112, in close proximity to the lots in question, were valued at $200 each. If this valuation is correct, then certainly Mr. Mahoney has ample compensation for the lots taken from him.

The award made to Charles S. Wood must be sent back to the commissioners for revision. It would seem, so far as we are able to judge from the record, that no proper award had been made for the lands which have been taken from him. The awards made to adjoining owners, with property apparently no better situated, seem to be very much larger than that made to Wood. It also would seem that evidence in respect to the value of Mr. Wood's property was disregarded, which in respect to other awards seems to have controlled, to a large extent, the judgment of the commissioners. In the weighing of the evidence which was produced before them the commissioners do not appear to have taken into consideration circumstances which affected the judgment of one of the witnesses who was examined upon the part of the city. And, furthermore, they seem to have excluded evidence offered upon the part of Mr. Wood, which he had a right to have before the commissioners in order that it might be considered in determining the valuation which should be made upon the land taken by him. What he had paid for the land, what he had done with it since, what *bona fide* offers for the land he had had, certainly was evidence which should be con-

sidered with the other evidence tending to show whether there had been an appreciation or a depreciation in the land in question. It may be, as has been suggested in other cases, that there were good and sufficient reasons for the apparent discrimination between the awards made to Mr. Wood and those made to some of his neighbors; and, also, there may have been good reasons for the commissioners disregarding evidence of a character which in other cases seems to have been controlling; but, upon the face of the record, it would seem that great injustice has been done to Mr. Wood, and for this reason the award should be sent back for revision, unless the commissioners are able to present to the court satisfactory considerations supporting the award which they have already made.

The only other objections necessary to consider are those raised on behalf of the city to certain awards.

It is urged by some of the parties interested in these awards that the city not having filed objections to the report they cannot be heard upon this application in opposition to the awards which have been made.

An examination of the act under which these proceedings took place does not seem to preclude the consideration of allegations against this report at the time of its confirmation, merely because no objections had been filed with the commissioners. In fact, this was the ruling which was made by this court at the time the report was originally before the court, objectors being then allowed to file objections against the confirmation of the report, notwithstanding that they might not have filed objections before the commissioners. It is, therefore, necessary for the court to consider the allegations against the confirmation of the report made on behalf of the city.

The objection as to the amount of the award to Austin C. Chandler cannot be sustained. Upon an examination of the evidence, the award seems to be large and greater than the court would make under the circumstances. But there were privileges and appurtenances to the land taken which seem to have been considered by the commissioners, and included in their award, and with the conclusion of the commissioners in this regard we see no sufficient reason for interference. The land and the appurtenances, the buildings and their contents, seem to have been appraised by the commissioners according to evidence which they had a right to consider.

The further objections raised by the city are to the awards made for the City Island bridge and Pelham bridge highway. It is plain that the award for City Island bridge is entirely erroneous. It is not, in fact, embraced within the limits of the park, and by the interpretation placed upon the act of 1884 by chapter 421 of the Laws of 1888, this bridge is especially exempted.

We find that in the act of 1888 provision is made for the maintenance of the public bridges and highways in Westchester county now existing which are within the limits of said parks and parkways; and a further provision, independent and distinct, providing that the city shall keep in good order and repair such bridges, and *also* one-half of the cost of the City Island bridge adjoining Pelham Bay park; clearly indicating that City Island bridge was not included within the limits of the act of 1884, and was not embraced within the limits of any of the parks or parkways which were within the county of Westchester. The evident intention of the legislature was to impose upon the city the maintenance of that one-half of the bridge which was adjacent to the lands which were about to be acquired, leaving the burden of the maintenance of the balance of the bridge to rest where it heretofore had done, upon the town of Pelham.

In respect to the award for Pelham bridge this also seems to have been erroneous.

Under the provisions of the act of 1888, whatever may have been the authority of the department of public parks upon the acquisition of the land embraced within the limits of the parks, it had not the authority to devote this bridge or any of the highways in Westchester county to any other or different purpose from that for which they are now maintained. And it is a familiar principle, which has long obtained in respect to the acquisition of lands for public purposes, that where the land embraced in a road is taken for a street, and devoted to the same use only, a nominal award for the taking of the land should be made, and a substantial award will not be sustained.

Pelham bridge is a part of the highways of Westchester county. And by the act of 1888, the park commissioners are bound to maintain that bridge for the use of the public; the county of Westchester has no property in these roads; the fee belongs to the owners of the

land over which the highway passes, subject to an easement of way for the public use. This right of enjoyment is a public one, confined to neither town or county. (*Cornell & Clarke* v. *Butternutts and O. T. Co.*, 25 Wend., 365.) It seems, therefore, to be devoted to the same purposes as heretofore, and, consequently, the town of Westchester sustained no damage whatever by its being taken by the park commissioners. Upon the other hand, it sustained the benefit of not being required to maintain it. The commissioners, in making awards for these bridges, erred, and so much of the report as makes such awards should be refused confirmation.

In all other respects, except as herein stated, the report should be confirmed.

BARRETT and CULLEN, JJ., concurred.