SUBURBAN RAPID TRANSIT CO. *v.* MAYOR, ETC., OF CITY OF NEW YORK *et al.*

*(Supreme Court, General Term, First Department.* April 17; 1891.)

EMINENT DOMAIN—FAILURE TO EXERCISE RIGHT.

In 1880 the plaintiff was authorized by statute to construct its railway through a northern suburb of the city of New York. The company not having exercised this right, in 1884 the legislature converted said suburb into a public park. *Held,* upon demurrer to the complaint of plaintiff in an action to establish its right to project its railway through said park, that the right of appropriation conferred upon the company in the first instance was not a vested right in the land, but a mere privilege to acquire an interest, which the legislature might defeat before its exercise by a devotion of the said lands to public uses.

Appeal from special term, New York county.

Action by the Suburban Rapid Transit Company against the mayor, aldermen, and commonalty of the city of New York and others to establish the right of the plaintiff to extend its railway through St. Mary's park in the northern part of said city. Plaintiff appeals from an interlocutory judgment sustaining a demurrer to its complaint, and from the order directing the entry of such judgment.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Burton N. Harrison*, for appellant. *Wm. H. Clark*, (*Franklin Bartlett* and *David J. Dean*, of counsel,) for respondents.

DANIELS, J. The action is somewhat unusual in its character, but substantially it has been brought to maintain the right of the plaintiff to appropriate so much of what is called "St. Mary's Park," in the northern part of the city of New York, as may be necessary for that purpose, for the construction of its railway. The plaintiff is a corporation created under chapter 606 of the Laws of 1875, and the acts amendatory thereof, and in its creation it became authorized to construct a railway from a point on what has been designated as its central route at or near 143d street, to a railway to be connected with it in the center of the Bronx river, about 400 feet north of the Pelham-Avenue bridge. This right was acquired by the plaintiff in the year 1880, but no measures were then taken by it, as they were provided for in the act of 1875, to appropriate or acquire the title to so much of the park in controversy as should be required for the railway of the plaintiff, and by chapter 522 of the Laws of 1884, passed on the 14th of June of that year, this land, together with other lands described in the act, were then appropriated to the uses of public parks and parade grounds for the city of New York. Each parcel of land was minutely and clearly described, and this park consisted of

the eighth parcel mentioned in section 1 of that act, and it was thereby declared, as well as the other parcels, to be respectively public places and public parks for public use and public purposes.  There was no exception or reservation of any parcel of the land from these objects.  Neither was the right of the plaintiff to acquire so much of the land as should be necessary for the construction of its railway through this park in any manner reserved or excepted, but by the language of the act all the land within the lines particularly mentioned was devoted to these objects, and that had the effect of impressing with and appropriating this land to the public uses mentioned in the statute. The law at once operated upon and took in its charge this property for the use and benefit of the public, and all that afterwards remained to complete its right was the ascertainment of its value in the manner provided for by the constitution and the laws, and the payment of the compensation so ascertained to the persons entitled to receive it.  This was quite fully considered in *Re Public Parks*, 53 Hun, 281, 6 N. Y. Supp. 750, and that conclusion was maintained, as it also was in *Re Mayor, etc., of New York*, 99 N. Y. 569, 580, 2 N. E. Rep. 642, and in *Re Mayor, etc., of New York*, 34 Hun, 441.  This devotion of the property to the public uses mentioned in the statute necessarily defeated the right previously acquired by the plaintiff to proceed and obtain the title to so much of this property as should be requisite for that purpose for the construction of its railway, for that right created no interest in the land itself.  The most that it did was to empower the plaintiff to take the proceedings mentioned in the statute, and through them to acquire the right to so much of the property as was necessary for the railway.  It was in no sense an interest in the land, but a privilege vested in the company to acquire the interest, as well as the title, by complying with and following the provisions of the law, and the plaintiff had wholly failed to take any proceedings under these provisions to obtain the title up to the time when the act went into effect as a law, and that consequently defeated whatever preceding right to take proceedings existed in favor of the plaintiff, for where property has legally been appropriated to a public use of this description, necessarily including its entirety, there another party having the simple right to acquire title for another public use by virtue of legal proceedings is disabled from interfering and from acquiring any part of the land devoted to the preceding public use.  This was very fully considered in *Re City of Buffalo*, 68 N. Y. 167, where that conclusion, upon principle as well as preceding authority, was deemed to be established, and was followed.

There is no room for construing the act of 1884 to be subject to this preceding right of the plaintiff, for its language is so general, and the description of the property so minute, as to exclude every possibility of that construction.  The property, and all of it within the designated lines, was erected into what is called "St. Mary's Park;" and by no effect that can be given to the language employed can it be held to be subject to any exception in favor of the plaintiff.  Its rights to proceed and acquire title in this property for its railway were necessarily ended and terminated by this appropriation of the property to the purposes of a park, and the consequence is that, when the plaintiff afterwards, and in August, 1884, filed its petition, and proceeded against the preceding owners to obtain a right of way through this property, it had no power to make that proceeding effectual in its favor. Neither did the court to which the petition was addressed, for the reason that the land had previously been devoted to this other public use; and the final order, which was made in February, 1885, in its favor was inoperative, and without jurisdiction as to the mayor, etc., to whose use the property had been appropriated by the act of 1884.  In the proceedings taken under the act to ascertain the compensation which was payable for the property, an award was made to the plaintiff for the rights supposed to have been obtained in this manner by it, amounting to the sum of $19,326, but which sum has not

been received by the plaintiff. This award proceeded upon a very liberal construction of what had previously taken place at the instance of the plaintiff, and was without doubt intended to fully indemnify it for any possible expenditures which it had made in the course of and under its own proceedings; but neither proceeding had the effect of giving to the plaintiff the right to appropriate any part of the land of this park to the construction and operation of its railroad. The city had been in no manner concluded by what had taken place, and no substantial benefit had been derived through its proceedings by the plaintiff.

It has been contended that the amendment contained in chapter 421 of the Laws of 1888 has evinced the intention of the legislature to be that the preceding rights acquired by the plaintiff to obtain title to this land were not intended to be divested by the act of 1884; but this amendment warrants no such construction of the act of 1884. All that it has further provided for is the power to acquire the title to railway lands that may form a portion of either one of the parks mentioned in the act of 1884, and by its language it appears to contemplate the existence of vested rights in the railroad companies in this manner referred to. The plaintiff had acquired no such right to the property in this park as entitled it to the least protection under this amendment. And that the city may have proceeded upon any different construction in reference to railway interests in other parks will not change the language or effect of either act, but they must still be construed to carry into effect the intention which has been expressed by the language employed in framing the law; and upon no occasion, and in no part of the law, has it been provided, either expressly or by implication, that a mere inchoate right,—which is all that was acquired by the plaintiff by the laying out of the line of its road,—was intended to be preserved or maintained by these acts. The evidence of intention, on the contrary, is that which has already been mentioned,—the appropriation exclusively of this property to the uses and purposes of a public park.

The counsel for the plaintiff, in the elaborate argument which has been presented, has divided and subdivided the points through which it was expected to maintain the plaintiff's presumptive right to this property. It is not necessary to follow this division more minutely than has already been done; for the construction required under the authorities to be given to the acts in question is such as to put it out of the power of the plaintiff, after their enactment, to acquire any interest in this land for the uses of its railway. It is not, of course, intended to be held that the proceedings for the appraisement of the compensation to be allowed and their confirmation should be attended with any adverse effect to the plaintiff, for whatever rights it at any time acquired have been preserved by the final order of confirmation. The difficulty in the way of the plaintiff is that its power to acquire the land was necessarily divested by the passage of the act of 1884. It is undoubtedly a serious embarrassment to the company, having no power by its own act to change the line of its railway, that the law should in this manner have interfered with the promotion of the enterprise. But that was a matter addressed solely to the legislature, which had the constitutional authority in this manner to prevent the plaintiff from acquiring any title to lands within the bounds of this park. It is not, however, without remedy, for it may still appeal to the legislature for such a rectification or removal of the difficulty as will permit the plaintiff still to construct and operate its railway, even though that may be done by passing around instead of through the land devoted to this park. There seems to be no ground upon which the court can or ought to interfere in the plaintiff's behalf, and the judgment and order should be affirmed, with costs.