(24 App. Div. 7.)

### In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  December 31, 1897.)

1. EMINENT DOMAIN—COMPENSATION.
    Where Laws 1894, c. 746, though locating by metes and bounds real estate to be taken for public use as a park, leaves it to the discretion of commissioners to determine whether all, or what part thereof, shall be so taken, no particular piece can be said to be taken until the commissioners have finally decided to take it, and for buildings erected thereon in the meantime the owner is entitled to an award of compensation.

2. SAME—BUILDINGS.
    The fact that such act provides for compensation for buildings erected on such land prior to the passage thereof does not impair the owner's right to compensation for buildings erected subsequent to the passage of the act and prior to the final appropriation of his land by the commissioners.

In the matter of the application of the mayor and commonalty of the city of New York to acquire title to lands in the Twelfth ward for a public park. Motion to confirm report of commissioners of estimate. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William N. Ivins, for the motion.

Henry A. Forster, John A. Weeks, Jr., and James A. Deering, for certain contestants.

RUMSEY, J.   It was provided by chapter 746 of the Laws of 1894, which took effect on the 22d day of May in that year, that certain pieces of land situate in the Twelfth ward in the city of New York, and which were particularly described in the act by metes and bounds, "or so much thereof as the commissioners to be appointed under the provisions of this act shall deem advisable to be acquired," were thereby declared to be a public place and a public park, for public use and public purposes.   The statute proceeded to direct that an application should be made by the mayor to this court for the appointment of commissioners to perform the duties devolved upon them by the act, and the first of which was to select so much of the land described in the first section of the act as they deemed advisable to be acquired, and, after having done that, they were directed to proceed with the condemnation of the land.   The statute contained carefully drawn provisions as to the particular steps to be taken to acquire title, and it provided, among other things, that the commissioners might allow compensation for any building or buildings upon such lands which had been built, placed, or erected thereon prior to the time of the passage of the act.

Among the persons whose lands were taken was one Carlo La Maida.   It appears from the papers submitted upon the motion that La Maida occupied the premises, which were intended to be taken, for the manufacture of macaroni, and that he had a substantial plant for that purpose upon the lands.   In the month of September, 1894, however, he began the erection of another building, for the purpose of increasing the facilities for his business, and this building was partly or very nearly completed in February 1895, although it was not wholly completed, as appears from the testimony, until January, 1896; but the precise value of the work which had been put upon it at the end of February, 1895, does not appear.   The commissioners provided for by the act were appointed on the 5th day of November, 1894, and the order appointing them was filed in the office of the clerk of the city and county of New York on the 13th day of December, 1894. They proceeded, after that appointment, to take such action as was required by the statute, and on the 15th day of January, 1895, they held a public meeting, pursuant to notice given before that time, to consider and determine the question whether the whole, or, if less than the whole, how much, of the lands and premises specified in the act should be taken for the purposes of the public park.   After hearing all parties who desired to be heard on that subject, they determined, on the 27th day of February, 1895, that it was advisable to acquire the whole of the lands described in the act, and they accordingly, at some date shortly after that, as appears from their report, caused the necessary plans and maps to be filed showing their determination.   In assessing the amount which should be paid to La Maida for his premises, they fixed the value of the building which he had put upon the premises after the passage of the act at $2,500; but

they reported that, as they were only permitted by the act to allow compensation for buildings which had been put upon the land before the passage of the act, they deemed themselves precluded from allowing to him any compensation for the value of that building, and thereupon the amount which they fixed as a proper award of damages was established by them at the value of the premises excluding the value of this building.    To this portion of the report La Maida objects, and it is upon his objection that the question arising before us is presented.

An application of the principles already established in cases of this kind will enable us, without much discussion, to dispose of the question presented upon this motion.    Whenever the legislature locates by metes and bounds lands to be taken for the public use, and the lands so taken are by the act itself declared to be taken for public use, by force of the act the particular property is appropriated for public purposes. In that case all that remains to be done is to assess the value of the property so taken, and the owner is entitled to receive compensation as of the time of the taking.    In re Mayor, etc., 99 N. Y. 569, 2 N. E. 642.    When, however, the legislature, although describing the land by metes and bounds, and directing that it shall be devoted to a public purpose, leaves uncertain what particular portion of the land is to be taken, but refers the question to commissioners, or other body of men, whose discretion is to be exercised upon the question, so that it cannot be known whether any given piece of land is taken until the commissioners have acted, the land is not finally appropriated for public purposes until the commissioners have finally acted upon it in the manner prescribed by the statute.    In re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750.    In that case, as it cannot be known, until the commissioners have acted, whether any particular land shall be taken or not, although the piece in question may be described in the act, the title of the owner is not interfered with; and it cannot be said that his land is impounded for the public use until the final determination of the body of men to whom the question whether it shall be taken or not is submitted.    Therefore, in such a case as that, no particular piece can be said to be taken until the commissioners have finally acted.    The rule is well settled that the compensation to be awarded for the taking of lands is the value of the land at the time when it is taken.    In re Munson, 29 Hun, 325; In re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750, and cases cited.

In this case the land of La Maida was not appropriated to a public purpose until the 27th day of February, 1895, when the commissioners finally decided to take it.    From the time of the passage of the act until the commissioners had finally acted, there was, to be sure, a possibility, or even a probability, that his land would be taken; but this probability imposed no duty upon the city or upon the commissioners to take the land and pay for it, nor did it interfere with the right of La Maida to use the land in any way in which the owner of the property might use it.    He was not called upon, by reason of that probability, to refrain from any act which the owner of the property might do by way of making his land more valuable or better fitted for the purposes for which he had been in the habit of using it.    Whatever he might do upon the land, by way of enhancing its value, which

any other owner might do, was lawful and proper; and the public authorities could not restrain him in it, nor would they be at liberty to say that he was going beyond his legal rights, unless, perhaps, it should appear that, with the certainty that the land was to be used, he was acting in bad faith, simply for the purpose of enhancing the damages which he was to receive for it. But nothing of that kind is presented in this case. We have simply the case of a landowner, whose land may probably be taken for the public use, who, without regard to that probability, makes improvements upon his land which are proper and fitting for the business in which he is engaged. We see no reason, under such circumstances, why, when the land is finally taken, he should not be entitled to recover whatever the value of it may be at that time.

But the commissioners refuse to allow compensation for this building because the statute gave them authority to allow compensation for any buildings which might have been upon the land before the passage of the act, and contained nothing authorizing them to pay for buildings which were put up after the passage of the act, but before the land was finally appropriated. We do not think that this provision of the statute was sufficient to deprive La Maida of the value of his land on the 27th of February, 1895,—the time when it was finally appropriated for public use by the action of the commissioners. Up to that time, as we have seen, the land was his. The commissioners were under no obligations to take it, and there was no privity between himself and them, by reason of which he could receive any compensation because he was deprived of the right to put such improvements on the land as might make it better fitted for the purposes to which he was then devoting it. He was not called upon, therefore, to refrain from putting the land to whatever use might be the most profitable to him; and if, putting it to that use, its value was more or less enhanced, nevertheless, he was entitled to be repaid whatever it was worth at the time when the officials of the city finally made up their mind to take it. The case of Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, seems to fully dispose of this question, and it is unnecessary for us to discuss it further.

Upon the whole case we conclude that the commissioners should have awarded to La Maida the value of his building at the time when the land was finally taken, which they have fixed at $2,500. It may be said that the building was not finally completed at that time; but there is nothing in the report submitted to us which will enable us to say that the value of it at that time was not what the commissioners have fixed, or that any substantial sum was put upon it after that date, although it is said that it was not finally completed until January, 1896.

The report must, therefore, be modified by adding to it the compensation to be given to La Maida for his premises, the sum of $2,500 as the value of his building, and, as modified, must be affirmed. All concur.