# CHARLESTON

Guyandot Valley R'y Co. v. Buskirk.

Submitted February 22, 1905.   Decided March 21, 1905.

57   417
58   288

57   417
60-447

1. Condemnation of Land—*Compensation is Market Value.*

In a condemnation proceeding by a railroad company to take the whole of a lot of land for the purposes of its road bed and station buildings, the compensation to be allowed the defendant for such land is, ordinarily, its market value at the time of its appropriation, without any deduction for benefits or appreciation in value, general and common to the community in which the land is, shared in by all property along the line of the road, and due to the prospect of its construction. (p. 421.)

2. Condemnation of Land—*Market Value Defined.*

The market value in such case is the price for which the land could be sold in the market by a person desirous of selling to a

person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, and unaffected by compulsion of any kind. (p. 428.)

3. CONDEMNATION OF LAND—*Market Value.*

Such value is to be determined by the same considerations that enter into a sale between private parties, namely, the availability of the land for all valuable uses to which it is adapted, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. (p. 430.)

4. CONDEMNATION OF LAND—*Rule of Ascertaining Market Value.*

What is termed the market value of property in the law of eminent domain is not a value fixed by concensus of opinion in the community in which the land is or among business men or dealers in real estate who are familiar with it, but is a value to be fixed by the jury upon consideration of all the evidence in the case, including the knowledge of the property which they have acquired by their view of it. (p. 430.)

5. CONDEMNATION OF LAND— *Witnesses—Evidence.*

The opinions of persons residing near the property and who have known it for a considerable period of time, though not dealers in real estate nor specially informed as to prices, are admissible evidence on the question of its value. (p. 432.)

6. CONDEMNATION OF LAND—*Purchase Price.*

The price paid for the land by the defendant is admissible evidence of its value, provided the purchase was not remote from the appropriation in point of time. (p. 432.)

7. NEW TRIAL—*Motion for, When Refused.*

A trial court may, in its discretion, refuse to set aside a verdict and grant a new trial, when the application is based only on the desire of the parties to have another trial. (p. 433.)

Error to Circuit Court, Logan County,

Condemnation proceedings by the Guyandot Valley Railway Company against George R. Buskirk and others. Judgment for plaintiffs, and defendants bring error.

*Reversed.*

McCOMAS & NORTHCOTT, for plaintiffs in error.

SIMMS & ENSLOW, and J. B. WILKINSON, for defendant in error.

POFFENBARGER, JUDGE:

Charging error in the rulings of the court as to the admission and rejection of evidence and the giving and

refusing of instructions, concerning the measure and amount of compensation, in a proceeding for the condemnation of real estate for railroad purposes, the defendants complain of a judgment of the circuit court of Logan county, awarding them three thousand dollars as just and full compensation for two adjoining lots owned by them and wholly taken for the purposes of the applicant's right of way for the road and station buildings.

These lots had been purchased by the defendant, George R. Buskirk, at a judicial sale a few days before the 5th day of May, 1903, for the sum of $1,825.00. Pursuant to notice, the petition of the Guyandot Valley Railway Company, for the condemnation of the property, was filed and commissioners appointed on the 27th day of July, 1903, and the commissioners fixed the amount of the compensation at $3,500.00 and returned their report on the 28th day of July, 1903. Thereupon the applicant paid said sum into court and excepted to the report, and, together with the defendants, demanded that the amount of compensation be ascertained by a jury. At the jury trial, which occurred on the 24th day of November, 1903, numerous witnesses were introduced and examined in support of the contentions of both applicant and defendants.

Two inconsistent theories, respecting the measure of compensation and the methods of applying the standard, were presented to the court in the offerings of, and objections made to, evidence, and in the requests for, and objections made to, instructions, one by the applicant and the other by the defendants. That of the applicant was adopted and applied. As all the rulings complained of spring out of this proposition or theory, the application of a few general principles of law will suffice to dispose of all the assignments of error.

All the instructions requested by the defendants were refused. They read as follows:

"1. The court instructs the jury that if they find from all the evidence, facts and circumstances before them in this proceeding that the land mentioned and described in the notice, application and Commissioners' report herein sought to be taken in this proceeding, is within the corporate limits of the town of Aracoma and at the time of the proposed taking thereof by the applicant, had a market value, then such

market value together with the view of the premises would be the proper measure of compensation to be allowed by the jury to the defendants for the same.

"2. The court further instructs the jury that in ascertaining what would be a just compensation to the defendants for the land proposed to be taken by the applicant, The Guyandot · Valley Railway Company, as set forth in the notice, application and commissioners' report in this proceeding, such general and intangible benefits as have accrued to this property in *comon* with all other property in the community where it is situate, by reason of the proposed building by the Guyandot Valley Railway Company of its road into said community, can not be deducted from its fair market value, if they find it had such value, at the time same was proposed to be taken by said Railway company,

"3. The *Couert* further instructs the jury that if they find from all the evidence, facts and circumstances in this proceeding before them, that the property described in the notice, application and Commissioners' report in this proceeding, proposed to be taken by the Guyandot Valley Railway Company, had, at the time of the proposed taking thereof by said Company, a market value, then it would be improper for them to take into consideration in ascertaining a just compensation to be paid for said property, the price paid therefor by the defendants George R. Buskirk and U. B. Buskirk."

The different theory of the applicant was embodied in two instructions, given over the objection of the defendant which read as follows:

"1. The court instructs the jury that in ascertaining what would be a just compensation to the owners for the land taken by the Railway Company in this proceeding for the uses and purposes of its road, that they must ascertain from all the evidence in this case as well as of their view of the land, the actual value of the land at the time when taken, without reference to any increased or enhanced value given to said land and *comon* to other land owners along the line of the road, by reason of the prospective construction of the Railway Company's road through such land.

"2. The court further instructs the jury that although the owners of the land taken by the Railway Company in this

case, is entitled to recover as a just compensation therefor
the actual market value of the land at the time it was taken
by the Railway Company, yet in ascertaining what the actual
market value was at the time the land was so taken, the jury
cannot conclude in their verdict any increased or enhanced
value to said land *comon* to other land owners along the line
of the road, by reason of the prospective construction of the
Railway Company's road through such lands, and in ascer-
taining the market value of said land, so taken, the jury must
take into consideration their view of the land, together with
all the facts and circumstances now in evidence in the case.''

As the whole of the property is taken by the applicant,
leaving no residue to be damaged or benefitted, the prin-
ciples governing the ascertainment of damages, as contradis-
tinguished from the value of the land actually taken, have no
application, and are not to be considered except by way of
elaboration in the discussion of the rules and principles which
govern the ascertainment of the value of land taken, to the
end that no inconsistent position may be assumed.

Benefits whether general and common to all property affect-
ed by the work of improvement, or peculiar to it, when ma-
terial, can obviously be considered for but one purpose,
namely, deduction from the damages to the property.   It
would be absurd to say they can be added to either the value
of the land taken or to the damages to the residue.   The land
owner is not entitled to recover for benefits conferred upon
him.   He cannot assert as the basis of a claim for damages
that which is a benefit conferred upon him.   They are to be
separately considered only for the purpose of deduction from
the amount he would otherwise be entitled to recover.   There-
fore, when benefits are excluded from the consideration of
the jury in estimating the damages, it is because the land
owner is entitled to them and not required to give them up
by suffering an abatement of their amount from his damages.
*Railroad Co.* v. *Dickerson*, 17 B. Mon. (Ky.) 173; *Railroad
Co.* v. *McComb*, 60 Me. 290; *Packard* v. *Railroad Co.*, 54 N.
J. L. 553; *State* v. *Miller*, 3 Zab. (N. J. L.) 383; *William-
son* v. *Amwell*, 4 Dutcher. (N. J. L.) 270; *Swaze* v. *Railroad,
Co.*, 7 Vroom (N. J. L.) 295.   Our decisions import that in
estimating damages to land not taken the owner is to be
charged with all benefits.   They say if the market value of

the residue after the taking is equal to, or greater than, its value before the taking, there is no damage. *Stewart* v. *Railroad Co.*, 38 W. Va. 438; *Blair* v. *Charleston*, 43 W. Va. 62; *Rowe* v. *Pulp Co.*, 42 W. Va. 551; *Board of Eductaion* v. *Railway Co.*, 44 W. Va. 71. Literally enforced, this rule would plainly charge the land owners with all benefits, general as well as special and peculiar. Though this proposition is asserted by many courts, it is to be doubted whether it is anything more than a mere rule by which to charge the owner with peculiar benefits. The value immediately before, and the value immediately after, part of the land is taken, or the improvement made, are compared instantaneously so that no time is allowed for general appreciation in the value of property in the community between the two points of time taken for the comparison. Upon this theory there would be, in fact, but one point, an instant within which the work is deemed to have been done and the comparison made, thus necessarily limiting the benefits to those which are merely peculiar and special. The increase from prospective improvement has already entered into the value of the property before the omparison is made. This interpretation of the rule accords with the following views expressed by Chief Justice Shaw in *Parks* v. *Boston*, 15 Pick. 198: "(This proceeding for acquiring the title) 'is not, strictly speaking, an action for damages, but rather a valuation or appraisement of an incumbrance created on the plaintiffs' estate for the use of the public. It is the purchase of a public easement, the consideration of which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be as in the case of other purchases, that the price is due and ought to be paid at the moment that the purchase is made when credit is not specially agreed on. And if a '*pie poudre*' could be called on the instant and on the spot, the true rule of justice for the public would be to pay the compensation with one hand while they apply the axe with the other; and this rule is departed from only because some time is necessary by the forms of law to conduct the inquiry.'    *
    *    *    It being quite clear, then, that the award would necessarily have been predicated of the market value of the condemned property at the time of the location, that is, of the filing of the map, there was no basis for specula-

tion." See full discussion of the subject in Matter of Department of Public Works, 53 Hun. 280, at pp. 289 *et seq.* and the numerous authorities there cited. This is merely a suggestion in response to the intimation, conveyed by the instructions given, that the land owner is in no case to have benefits from an improvement without paying for them. Our cases above referred to may not have such effect. Our statute mentions only peculiar benefits as proper matter of deduction.

However this may be, there is probably a difference between the rules applicable to land actually taken and land left in the hands of the owner, as regards benefits, whether general or special. Enhancement of value accruing to a residue is a benefit to the land owner; but enhancement in the value of the land taken does him no good. It benefits the railroad company or other condemnor, if anybody.. To the land owner, there can be no increase of value in it immediately after taking, for it ceases to be his property. Any antecedent enhancement in view of the probable construction of the work through the community, for which the land is required, is either extinguished by the appropriation or passes, with the property, to the appropriator. This is palpably true when the whole of a tract or lot is taken. There is no residuum to which benefits can adhere. Such case presents the direct question, whether the defendant or the applicant, is to have the increase in value arising from the prospective construction of the proposed improvement. One or the other must take it, or it must be held that there is none or can be none. To hold that the defendant cannot have the benefit of such increase would conflict, not only with decisions of this Court, and the early Virginia decisions, but with the great weight of authority as well. *Railroad Co.* v. *Foreman,* 24 W. Va. 662, expressly holds that advantages of a general character, which may be or are derived in common by the owners of land along the line of improvements or benefits derived by the country at large, are not to be excluded from the estimate. This means that they are not to be excluded from the estimate of damages—by deducting them from the damages not to be taken away from the owner.. Hence it must mean that, in the sense of not noticing them, they are to be excluded, wholly excluded, from consid-

eration in making up the estimate. That was a proceeding to take a right of way through a tract of land, by which land would be taken and a residue left affected by the improvement. The same rule was declared in *Railroad Co.* v. *Tyree* 7 W. Va. 693. As given in the syllabus of that case, it is obscure, but the opinion, at page 699, states it clearly. In *Jas. River &c. Co.* v, *Turner*, 9 Leigh 313, the court inserted the following clear statement in the syllabus: "Held, that the advantages to be derived to the owner of the land condemned for the company's use, from the improvement, to which the charter requires the assessors to have regard, are such advantages as particularly and exclusively affect the particular tract or parcel of land whereof a portion is condemned—not advantages of a general character, which may be derived to the owner in common with the country at large from the improvement. And it seems, that if the charter had provided, that advantages of a general character, which the owner of the land condemned may derive from the improvement in common with the country at large, should be set off against the actual value of the land condemned and the actual damages sustained by the owner, such a provision would have been unconstitutional." The rule thus declared was the conclusion arrived at after very thorough discussion by Judges Parker and Tucker, and has ever since been followed in Virginia. *Muire* v. *Falconer*, 10 Grat. 12; *Mitchell* v. *Thorne*, 21 Grat. 178. It is still the law of this state unless qualified by *Stewart* v. *Railroad Co.*, 38 W. Va. 438, *Blair* v. *Charleston*, 43 W. Va. 62, and other late cases, as has been shown by reference to the earlier cases, If such qualification has been made, it is only in respect to deduction of benefits from the damages to the residue, when there is one, and not to any such deduction from the value of land actually taken.

This is apparent from the terms of the universal rule by which the amount of compensation for land taken is determined, namely, the market value at time of taking thereof. As to the time at which the land shall be deemed to have been taken, there is great diversity in the decisions, 15 Cyc. 719, but practically all agree on the standard by which the value is to be determined. *Railway Co.* v. *Vance*, 115 Pa. St. 325; *Railroad* v. *Braham*, 79 Pa. St. 447; *Low* v. *Railroad Co.*, 63 N. H. 557; *Gregg* v. *Railroad Co.*, 67 N.

H. 452; *Tedens* v. *Chicago*, 149 Ill. 87; *Brown* v. *Railway Co.*, 125 Ill. 188; *Canal Co.*, v. *Archer*, 9 Gill & J. 479; *County* v. *Bridge Co.*, 110 Pa. St. 54; *Railway Co.* v. *Woodruff*, 49 Ark. 381; *Railway Co.* v. *Roeder*, 30 Wash. 244; *Esch* v. *Railway Co.*, 72 Wis. 229; *Muller* v. *Railway Co.*, 83 Cal. 240; *Boom Co.* v. *Patterson*, 98 U. S. 403; *Railway Go.* v. *Whalen*, 11 Neb. 585; *Railway Co.* v. *Porter*, 112 Mo. 361; *Dickenson* v. *Fitchburg*, 13 Gray 546; *Ligare* v. *Railroad Co.*, 166 Ill. 249; *Dupuis* v. *Railway Co.*, 115 Ill. 97; *Railway Co.* v. *Swinney*, 59 Ind. 100. It must be perfectly manifest that, in every case of a projected railroad, there is an appreciation in values of real estate all along the proposed line before any condemnation proceedings are instituted, and, since the market value at, or near, the date of the institution of such proceeding, is the measure of compensation, the enhancement due to the prospect of the construction of the railroad must have entered into the market value of the land, and the land owner obtains it because he takes the market value at that time, not at a date prior to the announcement of the intent to construct the road.

It is unnecessary, however, to rely, for this, upon mere argument from a rule of practice as a premise. Direct authority of high character, for the proposition that the land owner is entitled to general benefits arising from the prospective construction of the work for which the land is appropriated, is at hand. In *Kerr* v. *South Park Comrs.*, 117 U. S. 379, the following charge, delivered by the trial court to the jury, was approved: "A number of witnesses testified that the agitation of the park project, the anticipation that the legislature would authorize the appropriation of lands to establish a park in the vicinity of the present South Park, and the introduction of the bill into the legislature, which finally became a law on the ——day of February, 1869, materially enhanced the value of lands embraced in the present park lines, as well as the lands adjacent thereto in that vicinity. Any resulting benefits to the lands within the proposed park from this and other causes, such as the growth and prosperity, or the anticipated growth and prosperity of the city of Chicago, you should take in account in determining the amount that will fairly compensate the owner." The court also approved the principles announced in *Cook* v. *South*

*Park Comrs.*, 61 Ill. 115, in the syllabus of which the following is found: "In assessing the damages, the value at the time of the condemnation should be considered, the owner being entitled to the benefit of an advance caused by the prospective establishment of a public park." These were cases in which the whole of the property was taken, just as in this case. In *San Diego &c. Co.* v. *Neale*, 78 Cal. 63, the court refused to apply the rule, because of the peculiar character of the land and the fact that it had no market value, but admitted the soundness of the principle. *Cobb* v. *Boston*, 112 Mass. 181, holds that such prospective benefits enter into the market value, but that the facts as to what improvements have been made or are contemplated, are not admissible as independent evidence, nor should the jury, in estimating value, treat such enhancement as an independent element of value. They must find the value at the time of the appropriation, considering, for that purpose all proper evidence thereof, including the prospective construction of the improvement. In *Cobb* v. *Boston*, Wells, J., said: "The question to be determined in each issue was the market value of the land at the time it was taken by the city. The petitioner Cobb was not entitled to the advantages, whether real or speculative, which might result from improvements to be made by the city, after taking the land. Neither the fact that such improvements were afterwards made, nor that they were contemplated before the land was actually taken, was competent as independent evidence, to show what the market value was. So far as the market value was in fact affected by the knowledge of what was to be done, or of what was contemplated, the petitioner Cobb was allowed the full benefit of it. His witnesses took it into consideration in making their estimate of value, to which they testified; and were also allowed to state it as a reason for such estimate. This was all he was entitled to." Collateral or concomitant elements of value in the property are not to be separately considered in arriving at its value. *In re Department of Parks*, 53 Hun. (N. Y.) 280; *Railway Co.* v. *Swinney*, 59 Ind. 100.

An inspection of instructions Nos. 1 and 2, given at the instance of the applicant, in the light of the principles just announced, will reveal their incorrectness. They, in effect, required the jury to scale down, in direct violation of law,

the value of the land at the time of its appropriation, by deducting therefrom the amount of such appreciation in value as had accrued by reason of the prospect of the building of the railroad through the town of Aracoma and that section of the country. This error in the instructions is so grave in character as to call for a new trial, though it may not have prejudiced the defendants, in point of fact. Whether it did or not, it is impossible to say, but an erroneous instruction raises a presumption of injury. These two instructions are objectionable for another reason of less gravity. They misrepresent the status of the matters involved, by assuming that the road is to be constructed through the lands proceed-against. In one view the assumption accords with the truth, but, in another, it does not. The road will not be constructed through the land as the land of the defendants, as in most cases, but through it as the applicant's land. More accurately stated, however; the fact is that the railroad takes all the land for its purposes, absorbs or consumes the use of it, and does not merely pass through it. Whether for this a new trial would be allowed it is unnecessary to say, but it is deemed expedient to observe, in view of it, that instructions should be clear and free from inconsistency.

That the market value of the land in July, 1903, is the amount to which the defendants are entitled has not been denied. For the applicant, it has been insisted that the market value does not include general enhancement in view of the probable construction of the road. But the defendants seem to think the terms market value have some peculiar meaning or significance which precludes the introduction of certain kinds of evidence and directs inquiry by the jury to some value other than that which, upon consideration of all the evidence bearing upon the question of value, they think is the actual value of the property. This necessitates an inquiry into the meaning and purpose of the market value rule.

The true import of the terms "market value," "actual cash market value" and "fair cash market value," which are generally regarded as convertible, is partially reflected by the nature of certain other values sometimes sought to be recovered, in view of which these terms were adopted as expressive of the standard or measure of compensation. Efforts have

been made to obtain the value of property in view of a particular use to which the owner has devoted it, such as mercantile trade, which cannot be permitted. *San Diego &c.* v. *Neale,* 78 Cal. 63, 67. Thus, in *Esch* v. *Railway,* 72 Wis. 229, a charge, that the law did not provide for compensating the owner of the lot for losses in his business, was approved. In *U. S.* v. *Honolulu Co.*, 122 Fed. Rep. 581, the court said: "The compensation to be made for land taken for public use in the exercise of the right of eminent domain is measured by its market value at the time of the taking, and evidence is inadmissible to show that it has a peculiar and enhanced value to the defendant." See also *Junction Ry.* v. *Woodruff.* 49 Ark. 381; *Brown* v, *R. R. Co.* 125 Ill. 600; *Shano* v; *Bridge Co.* 189 Pa. St. 245; *R. R. Co,* v. *Eaton,* 136 Ill. 9; *Munkivitz* v. *R. R. Co.*, 64 Wis. 403; *R. R. Co.* v. *Todd,* 39 Neb, 818; *In re R. R. Co.*, 98 N. Y. 447. It was said in 17 Wend. 649, *in re Furman St.*: "The use to which the owner has applied his property is of no importance beyond its influence upon the present value. If highly cultivated, it will be worth more than if suffered to run to waste.    *    *    * What price will it bring in the market? That is the proper inquiry in a proceeding of this kind. As between individuals the owner may demand any price, however exhorbitant, for his property; but when it is taken for public purposes he can only demand its real value. That value cannot depend in any degree on his own will. To allow either his judgment or his fancy, in relation to the proper use of the property, to influence the question, would be to make the estate either more or less valuable, as it might happen to be possessed by one individual or another." Another value which it would be obviously unjust to adopt is the value to the appropriator for the purpose for which it is taken, another special utility value, instead of the value for all purposes to which the property is adapted. If this were permitted, a city, town, county court, school board, or railroad company might be made to pay many times the actual value of a piece of property, indispensable to its purposes. Another kind of value guarded against by this rule is the speculative value. *Muller* v. *Railway Co.*, 83 Cal. 240.

The rule is founded upon the assumption that all real estate has a market value, and this is practically true, although these

values are not so well defined and easily ascertainable as are the market values of wheat, oats, rye, corn, hay, potatoes, bacon, beef, cattle, hogs, lumber, coal and the numerous commodities found in commerce.   Occasionally there is an exception to this rule, owing to the peculiar nature of the property.   In a few rare instances courts have said the property involved had no market value.   The property of the Monongahela Navigation Company, taken by the United States, by the proceeding reported in 148 U. S. 312, consisting of its locks and dams, franchise and right to take tolls, seems to have been so regarded and treated, since the value was determined by the use in which the property was employed, but such proceedings bear little analogy to a simple action to condemn a small piece of land.   Owing to peculiarity of situation and other circumstances, sales of land may be infrequent and prices of it seldom discussed, but the value must nevertheless be determined by practically the same methods as those employed in settled communities in which sales are frequently made.   For this, see *San Diego &c. Co.* v. *Neale*, 78 Cal. 63, in which the court declared that: "When there is no current rate of price, and where in consequence the court must arrive at the value from a consideration of the uses to which the property may be put, the enhancement in value by reason of the proposed improvement cannot be considered. Such a value is too remote and speculative."

In view of what has been said on the subject of market value, it is perfectly manifest that the property involved here has a market value.   All parties admit that, if offered for sale in the open market, it would bring a price.   It had been sold only a short time before the application for its condemnation was made for $1,825.00 at a public judicial sale.   It clearly has that which falls within the definition of market value, namely, "the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell, and is bought by one who is under no necessity of having it." *Stewart* v. *Railroad Co.*, 38 W. Va. 438; Lewis on Em. Dom. 478; *Railway Co.* v. *Vance*, 115 Pa. St. 325; *Lawrence* v. *Boston*, 119 Mass. 126; *Railway Co.* v. *Woodruff*, 49 Ark. 381.   See long list of cases cited in that most excellent new work, "Words and Phrases," Vol. 5 p. 4383.   It is equally apparent that the market value of this property, at the time it was

taken, had not a fixed, or readily ascertainable, value, such as many kinds of personal property have, but only a value determinable by the opinion of the jury upon consideration of all the evidence bearing on that question.

This is shown by the rules prescribed by the courts for ascertaining the value. In *Boom Co.* v. *Patterson*, 98 U. S. 403, the court held that: "In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, what, from their availibility for valuable uses, are they worth in the market. As a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." In *Low* v. *Railroad Co.*, 63 N. H. 557, the court said: "In assessing the plaintiff's damages, the question was: What was the fair market value of the land at the time when it was taken by the defendants? In determining that question, whatever in its location, surroundings, and appurtenances contributed to the availibility of the land for valuable uses, was proper evidence to be considered by the jury in estimating its saleable character, and ascertaining its market value." To the same general import see *Santa Ana* v. *Harlin*, 99 Cal. 538; *In re Department &c. Co.*, 53 Hun. 280; *Ligare* v. *Railroad Co.*, 166 Ill. 263; *Dupuis* v. *Railroad Co.*, 115 Ill. 97; *Brown* v. *Railway Co.*, 125 Ill. 600; *Kierman* v. *Railway Co.*, 123 Ill. 188. Such latitude is allowed, in seeking the value, that opinion evidence is freely admitted and given a wide range. *Railroad Co.* v. *Foreman*, 24 W. Va. 662, 674; *Beck* v. *R. R. Co.*, 148 Pa. St. 271; *Cochrane*, v. *Com.*, 175 Mass. 299. On the question of value, the jury may rest the verdict largely upon their own knowledge derived from a view of the premises. Thus, in *Kierman* v. *Railway Co.*, 123 Ill. 188, the court held as follows: "The result of a jury's personal view of the land over which a railroad is sought to be laid, is evidence proper to be acted upon by them; and if they believe, from the whole evidence, that they have, from such view, arrived at a more accurate judgment as to the value of the premises sought to be taken, and of the damages, than that shown by the evidence in open

court, they may, upon the evidence rightfully fix the value of the land taken; and the damages, at the amount so approved by their judgment formed from the personal examination, even though it differed from the amount testified to, and the weight of testimony given by witnesses in open court." Whether this Court would be willing to go so far as that, it is unnecessary to say, but it could not repudiate the general rule that verdicts in such cases will rarely be set aside, in the absence of error in the rulings of the court. Such verdicts have a peculiar immunity from disturbance for the very reason that the amount of compensation is so largely a matter of opinion and judgment on the part of the jury, resting in part upon the opinions of witnesses. All this clearly points to the absence of any resort to a supposed fixed market value, established by concensus of opinion in the community, or otherwise, like the value of commercial articles, for which the jury must inquire, and on which if found, together with their knowledge of the premises derived from their view of the same, they must base their verdict, disregarding all other evidence.

As each of the three instructions proposed by the defendants contains a direction to the jury to inquire as to whether the property had a market value, and, if so, to rest the verdict on that and their view of the premises, instead of directing them to ascertain the market value of the property, using for that purpose, as evidence, the knowledge acquired by their view; and all other evidence, facts and circumstances in the case, including any market value it might have by concensus of opinion among those who were familiar with real estate values, as a mere fact in evidence to be considered with all other evidence, if, indeed, such fact is competent evidence, it being in the nature of heresay information, I regard them as bad and as having been properly refused; but a majority of the Court are of a different opinion and think the court erred in refusing to give instructions Nos. 1 and 2. My associates fully concur in my statement of principles applicable to the subject, but differ from me in construing the instructions. They think the instructions, properly interperted, direct the jury to ascertain, from all the evidence in the case, the value of the property, and do not hamper their action by an inquiry

for, and adoption of, a supposed market value, other than that to be fixed by themselves.

We are of the unanimous opinion, however, that instruction No. 3, requested by the defendants, was properly refused, because it excludes the purchase price of the property from consideration as evidence. The price paid for the land, if not too remote in time, is admissible evidence in such case. *In re Department &c. Co.*, 53 Hun. 280. This property was purchased only about three months prior to the commencement of this action.

The rulings on the admission and rejection of evidence need not be noticed in detail, since they are all clearly covered by the principles above stated. One of them related to the purchase price of the property, and has been disposed of. The others may all be grouped under the objection to the competency of witnesses to testify to their opinions as to the value of the property because of lack of knowledge of the supposed market value of the land, although all of them knew the property well. One of them, J. S. Miller, had resided in the little town of five hundred inhabitants twenty-three years, still resided there, had bought the property itself three times, and had lived in the house on it for twenty-two years. W. A. DeJarnette lived two miles from the town at the time and had previously resided in it for about thirty years. Walter Cary had known the property for about fourteen years and had resided in the town about the same length of time. C. V. White had resided in the town for nearly thirty-two years. Bruce Holland lived in the town and had known the property for five years. J. Cary Alderson knew the property and had resided in the town for thirteen years. Simpson Ellis, a farmer and blacksmith, lived within three miles of the town, and had run his blacksmith shop in it for ten years, knew the property in question and had once owned it and resided in the house on it. Nothing but the erroneous assumption of counsel for defendants as to the market value theory could have lead them to urge against such witnesses the objection of incompetency. All the rulings of the court respecting this evidence were correct.

It is urged that the court erred in refusing a new trial on the application of both plaintiff and defendants, without

regard to the question of error in the rulings of the court or the verdict. Absence of any authority on the subject necessitates the adoption of a rule, and, in view of the discretion always accorded to trial courts, concerning the matter of new trials, we hold that the exercise of such discretion, in refusing to set aside a verdict on the sole ground of a request by both parties for such action, is not an abuse of it and is, therefore not reviewable. Such an application is not analogous to one for the setting aside of a consent decree, which partakes largely of the nature of a rescission of an agreement. Here there has been a full trial in which the parties have agreed to nothing, but have fought each other to the end. If a trial court were bound to grant new trials on such ground, the work of the courts might become greatly increased to the prejudice of suitors, who, never having had a trial, would be delayed by those who had had, perhaps, several. When the law has given a man one fair trial it owes him no further duty. Illustrations of this principle are numerous.

For the error noted, the judgment must be reversed, the verdict set aside, and the case remanded for a new trial according to law and the principles herein stated.

*Reversed.*