# CHARLESTON.

State Road Commission *et al. v.* F. H. Moss

(No. 6430)

Submitted November 13, 1929. Decided November 26, 1929.

*W. E. R. Byrne,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *C. C. Knapp,* for defendants in error.

Lively, Judge:

The verdict of the jury awarding damages to plaintiff for the taking of land for a state road, was for $396.00, just $4.00 less than the award of the commissioners in the condemnation proceeding; and upon refusal of the court to disturb the ver-

dict, and entry of judgment, the landowner, Moss, prosecutes error.

The error relied upon is that the jury was not warranted in assessing the damages at such a low figure, under the evidence, and therefore, the verdict spells passion or prejudice or some ulterior motive on the part of the jury.

No error is predicated on the introduction or refusal of evidence or the giving or refusal of instructions.

The assignment of error relied upon calls for a close review of the evidence.

It appears that in the year 1925 the State Road Commission took over for construction and maintenance a county road known as the Scary-Winfield Road which ran through the lands of F. H. Moss in Putnam county, and designated the same in the manner prescribed by law as a state route. The county road ran through appellant's land approximately where the hill land joined the bottom land, which bottom land was between the road and the Kanawha River. Some time later (the record is woefully silent as to when the petition was filed and the dates of the various steps taken thereunder) the Commission filed its petition to condemn a strip through appellant's land fifty feet wide and 408 feet in length, and averaging from fifty to one hundred feet distant from the river side of the old road. The strip of land between the old road and the new contained about seven or eight acres and had formerly been in use for agricultural purposes in connection with the bottom land. Appellant owned the hill land above the old road, his tract consisting of about 296 acres of which there were 80 acres bottom land contiguous to the river. The first commissioners appointed to assess the damages reported it at $400.00; appellant demanded a jury trial, and on March 9, 1928, the jury returned its verdict at $396.00, on which the judgment now complained of was entered. It will be observed that at least two years had intervened between the time the road commission had established the state route and the date of the verdict. Evidently the state road had been completed at the time of the trial, for one of the items of damages sought to be included

was caused by alleged improper construction of the culverts under the road. The jury was taken to view the land and to observe the damage, if any, to the residue.

The land actually taken was 4.95 acres. Moss says that this land at the time it was taken was worth $500.00 an acre for agricultural purposes, and was worth the same after the road had been built. He bases the fair market value largely on a sale made by him of about 21 acres (5 acres bottom and 15.9 acres hill) to the Salvation Army after the hard road had been constructed. The jury was warranted in giving little weight to appellant's opinion of the value of his land at the time it was actually taken. He also claimed that it was necessary for him to fence the new road on each side with a fence costing $634.00. He evidently included in his estimate a fence along a portion of the road which ran through the Salvation Army land already sold; besides, the necessity for that kind of a fence is not clearly shown. He had not built it. He may never do it. His two fences along the old road were evidently of much less cost. The one on the upper side of the old road perhaps cost as much proportionately as those contemplated. Why should this expensive fencing be necessary when fencing of much less value had served the owner's purpose? The jury of freeholders, we think, after its view of the situation, could well pass upon the necessity for the expensive fencing claimed, as well as the kind of fence if any which would place the landowner in *statu quo* in that regard. Another item of damage is that the culverts are so constructed as to cause water to stand on some portions of the bottom land. This is not a proper element of damages in condemnation proceedings. The presumption is that the public improvement will be properly constructed, and that no damage will result from the construction. It is properly cognizable in an action of tort. *Watts* v. *N. & W. Ry. Co.,* 39 W. Va. 196.

The inquiry here is, what is the value of the land taken and the damage to the residue by that taking, at the time of taking and such prospective damages as are then necessary or reasonably incident to the work, and is not an inquiry of the

damages done by an improper construction of the road. "Even when condemnation proceedings have been conducted under a constitutional statute which provides an adequate means for recovering compensation for land taken or injured, which may be instituted by the owner, the remedy for an injury to the land which is not a necessary incident to the construction of the public work for which the land is taken but is due to negligent construction or operation is not one under the statute, but rather in the nature of a common law action of trespass, or its modern equivalent." 10 R. C. L., 225, sec. 191.

The principal contention remains, namely, the value of the land actually taken. Witness Hart introduced by plaintiff, was not acquainted with values in the vicinity of the Moss land. Witness McClung testified as to the price asked for a tract of twenty acres of land, after the road had been constructed, lying about two miles from the Moss land. He said he thought the Moss land lying above the hard road had been damaged, but gave no figures.

Witness Cain, a farm hand, said he thought the Moss land was worth $500.00 an acre, and that the damage to the land above the hard road had been to the extent of $100.00 per acre, because it could not be used for cultivation, being too narrow, and could be used only for pasture. The change from cultivation to pasture had damaged the land $100.00 per acre. His reason for fixing the value of the land taken was because it was "good land". He had never heard of any land sold at that price. The jury was justified in giving little weight to his evidence, or in giving it none. Witness Taylor, a real estate dealer, thought the land *below* the hard road was worth $250.00 per acre at the time the land in question was taken. He refrained from saying what the land was worth if the hard road had not been constructed. Evidently he based his opinion of value on the fact that the road had been taken over as a state highway by the Road Commisison and condemnation proceedings started. He said he was of the opinion that thereby the land had been enhanced $400.00 per acre. The appellant then rested his case.

Petitioner introduced witness Rayne, who owned 18½ acres of land similar in character and in the vicinity of the Moss land. Five years previous he paid approximately $100.00 an acre for it and was of the opinion that the building of the hard road had enhanced both his and the Moss land to $350.00 an acre. He thought there had been no change in values from the time he bought, up to the time of knowledge that a hard road was to be constructed; but he further said that he thought his and the Moss land had enhanced to $250.00 an acre before knowledge that the road was going to be built. Witness Firebaugh said there had been no change in values for ten years immediately prior to the time of knowledge that the hard road was to be built. He was of the opinion that the lands lying on the hard road had increased in value 50% because of the construction of the road. He knew of no sales except the Rayne 18½ acres, above referred to in Rayne's testimony, and the sale by Moss to the Salvation Army. Witness Gilkes, Salvation Army secretary, said his organization bought from Moss the 21 acres, more or less, for $4100.00, January 20, 1927, because of its peculiar fitness for their purpose, but would not have purchased the land at all if the state road had not been there. The court admitted this evidence only for the purpose of contradicting Moss who said his land was worth $500.00 an acre, and the building of the hard road had not increased its value. Witness Young, a justice of the peace, said he was familiar with the Moss land, having at one time farmed it, and that in places where the road was built the land was swampy. He fixes the value of the Moss land immediately before its taking at $100.00 per acre, and at $200.00 after the road had been built. Witness Barrows, clerk of the county court, introduced the land book for the year 1926, which showed the Moss bottom land assessed at $80.00 per acre and the hill land at $16.00. This was all the evidence which has been tediously detailed, because of the assertion that the jury was influenced by passion or prejudice.

It will be observed that there is very little evidence bearing on the market value of the land at the time it was taken.

That taking was when the plans and specifications were filed. *McGibson* v. *County Court*, 95 W. Va. 338. There had been but one sale in the vicinity, and that was to Raynes five years previous. His 18½ acres, including improvements, was at the price of $3,600.00. The county road was taken over and made a state route in 1925, and that fact seems to have been ignored in the opinions of value. The trial proceeded on the theory that the market value should be ascertained as of the date the condemnation proceedings irrespective of any·enhancement caused by the taking over of the road into the state system of hard roads, or of the time when the appropriation of the land was made. We think the jury would have the right to consider these facts in determining the fair market price. The opinion evidence is a mass of conflict. Under the well established rule, in view of the verdict, the testimony of appellant's witnesses in conflict with that of petitioner's testimony must be disregarded in this Court.

The value of land taken and damages to the residue is always a matter of opinion. In this case, as well as in most all others, the opinion evidence is at wide variance. While the opinions here given were not from experts, strictly speaking, they were admissible for what they were worth. This rule is liberally applied in condemnation of farm lands. 4 L. R. A. 767, note. This rule was applied in *Power Co.* v. *Brotherton*, 90 W. Va. 155; and in *Guyandotte, etc.* v. *Buskirk*, 57 W. Va. 417. The weight of all such evidence is for the jury, and they are not bound to follow the estimates given in the opinions. "The opinion of experts as to value, however, are not to be passively received and blindly followed, but are to be weighed by the jury and judged if in view of all the testimony in the case and the jury's own general knowledge of affairs, and have only such consideration given them as the jury may believe them entitled to receive." 10 R. C. L., p. 218, sec. 187. The jury viewed the land taken, they noted its character, location and condition, and the damages, if any, to the residue. It is generally held that the jury may take into consideration what they saw on the view in connection with their own knowledge and ex-

perience and fix the damages both by evidence and view. *Guyandotte Valley Ry. Co.* v. *Buskirk*, 57 W. Va. 417, 50 S. E. 521, 110 A. S. R. 785; *Zanesville, etc. R. Co.* v. *Bolen*, 76 Ohio St. 376, 81 N. E. 681. In the instructions for both litigants this principle was accentuated, and the jury was told to fix the damages by considering all the evidence, including the view of the premises; and that "it is the province of the jury to consider the knowledge of the land taken and the residue of the property of said plaintiff which the jury acquired from their view and examination of said real estate, along with all the other evidence in the case."

Five commissioners and twelve jurymen, all freeholders, have practically agreed on the damages. Their finding has been approved by an erudite judge of much practical experience and common sense. This Court is now asked to reverse the judgment and set aside the verdict on the ground that it evinces passion, prejudice or ulterior motive. We cannot hold that the case calls for reversal under this assignment of error; and the judgment will be affirmed.

*Affirmed.*