THE COUNTY COURT OF WYOMING COUNTY a *Corporation v.* MRS. A. H. COOK *et al.*, AND GEORGE W. COOK, AND J. M. COOK, AND L. D. HARLESS

Nos. 6975
6975-A
6975-B
6975-C

Submitted September 15, 1931.   Decided September 22, 1931.

*E. W. Worrell,* for plaintiffs in error.
*Bailey & Shannon,* and *D. D. Moran,* for defendant in error.

84

LIVELY, JUDGE:

These condemnation proceedings, terminating in the circuit court in verdicts and judgments thereon adjudicating the amount of damages to which each of the landowners was entitled for the land taken and damages to the residue, are brought here by the landowners who charge, as the sole point of error, that the verdicts were the result of passion, prejudice or some ulterior motive on the part of the jury. This charge necessitates a close inspection of the evidence pertaining to each case.

The lands involved through which state highway No. 67 (now changed to state route No. 10) has been constructed, lie on Big Huffs Creek in Wyoming County, near Logan County. Huffs Creek is a small mountain stream with steep mountains on each side. The bottoms or level land along the creek are narrow, as a rule. Illustrative of this is the A. H. Cook tract here involved, which has 25 acres of bottom land in a distance of one and one-fourth miles. In flood stages the volume of water amounts to approximately four hundred square feet, that is, the flood stages would cover a space forty feet wide and ten feet high. The stream, before the improvement, was meandering and many parts of the bottoms became inundated at high stages. Some of the landowners attempted to control the water by riffraffs and the like, which seem to have been only partially effective. The highways, as constructed, often occupies the old bed of the stream, channels having been constructed along the right of way of sufficient width and depth calculated to confine the waters at flood stages. Illustrative of the nature of the terrain and the natural meanderings of the stream before the construction, is that on the A. H. Cook land extending up and down the stream one and one-fourth miles. The right of way, sixty feet wide (in two places much wider to take care of the water) taking 12.5 acres, the road occupies approximately three acres of the original creek bed. The right of way in many sections follows as closely as possible the toe of the hill, that is, at the edge of the slope, but in order to avoid bad alignments and sharp curves, the right of way cut through the small bottoms in places. The actual amount of bottom land on the A. H. Cook land on which the

road is constructed is hard to determine from the evidence. The total land taken on this tract is 12.5 acres, three acres of which lie in the old creek bed, some portions of the road (not to be determined from the evidence) running along the toe of the hill, and other portions (likewise not determinable from the evidence) running across the bottom. The jury spent a day in viewing the construction, the property taken and the damages to the residue of each tract, and could determine the actual amount of bottom taken and its value as farming lands, which seems to be the major basis of value put on the land taken by the owners. These general observations will give a rather indistinct picture of the litigation as shown by the record. Of course, the picture was clear and distinct to those who viewed the lands and the completed road.

After the right of way was surveyed, and before the construction was begun, the county court began these proceedings to condemn. Five commissioners were appointed to ascertain the value of the land actually taken and the damages to the residue. On September 2, 1929, they reported that A. H. Cook's heirs were entitled to be paid $4317; for G. W. Cook they reported $1105; for J. M. Cook $2340; and for L. D. Harless $2420. Both the landowners and the county court excepted and demanded a jury. Pending thees condemnation proceedings, the road was constructed (excepting the hardsurfacing) before the jury was selected and the case tried. The cases were tried to the jury at the May term, 1931, resulting in verdicts and judgments as follows: For A. H. Cook's heirs $1581; for G. W. Cook $375; for J. M. Cook $475; and for L. D. Harless $340. It will be seen that there is a wide difference between the amounts reported by the commissioners and the amounts returned by the jury. It is on this wide difference coupled with the evidence before the jury, that the landowners seek to set aside the verdicts on the ground that they reflect passion, prejudice, or sinister motive. We will summarize the material evidence respecting each tract.

A. H. Cook.   Land taken 12.5 acres.

The entire tract consists of 274 acres on the land books, but actually more, assessed at $35.00 per acre, through which the

road runs on Huffs Creek a distance of one and one-fourth miles. Bruce McDonald and S. E. McDonald, both of Logan County and owners of land in Logan County situate on lower part of Huffs Creek, were of the opinion that the value of the land taken was $300 per acre and the damages to the residue $2250, making a total of $6,000. They say the land was chiefly valuable for coal and timber and fix the market value per acre at $125.00 because of the coal and timber supposed to be in and on the land, but declined to put that value on the land for agricultural purposes. Neither witness qualified as expert on the value of farming lands. Their estimate of the market value was not based on any recent sales in that community, but largely on an inspection they had made. The jury was warranted in giving little weight to this opinion evidence. L. D. Harless, one of the defendants, was of the opinion that the A. H. Cook land actually taken was worth $400 per acre, and the damages to the residue at $2,000. The items of damages to the residue consists of $1,000, which he thought would be the value of drainage pipes for the 12 acres of the bottom not taken; and the other $1,000 for fencing, but did not know how much fencing was necessary—admits it was a guess. Stone, an engineer, says that he figured it would take 767 feet of drain pipe to drain the 12 acres at a cost of $1,917.50 and he says that 405.5 rods of fencing cost $650.56. On this land, as shown by the map filed by the witness, there had been constructed one culvert under the road to the creek, and seven drain pipes all of which extend to the creek except one. On cross-examination he said he did not see any effect on the land from the drain pipes and culverts. He admitted that the necessity for the claimed drainage was speculative. J. K. Cook, son of A. H. Cook, deceased, and his administrator, said the actual cost of fencing the land formerly inclosed amounted to $650.03. Garfield Painter, a witness for the county court, testified that where the new fence is now located there had formerly been an old rail and brush fence, and that the "biggest portion of it was down, and would not keep anything out much." J. K. Cook said the road actually destroyed $65.00 worth of his crops, and that it cost him $56.00 to protect the remainder from the public until it could be harvested. An-

other item of damages to the residue is based on the alleged increased cost of marketing 186,000 feet of walnut timber growing on the hillsides, because it could not be slid down on account of the road location, which item is placed at $651. Two witnesses for the county, John Painter, 52 years old, and Sherman Painter, both of whom lived near the lands in controversy all their lives, fixed the value of the A. H. Cook land at from $60.00 to $75.00 per acre, including mountain and bottom land. Sherman fixed the value of the farm taken, at $60.00 while John says it was perhaps worth $75.00 to $100. The jury was warranted in finding that the contemplated expenditures for drain pipes was not necessary; and that the bill for fencing was in excess of what was necessary to put the fencing in as good condition as it was before the road was built. The landowner was only entitled to be put in *statu quo* as to his fences. *Road Comm.* v. *Moss*, 108 W. Va. 267. The established rule that a court in considering a motion to set aside a verdict must discard all the oral testimony of the movant's witness in conflict with that of his adversary, applies on condemnation proceedings. The jury determines the credibility of witnesses. The view taken by the jury would also give it the right to pass upon the alleged increased costs for getting out the timber, and whether it could be slipped down the hills without obstructing the highway. The location of the timber with respect to the bottom land on the timber side of the road is not shown in the evidence. The weight to be given to the opinion of witnesses as to the value of land taken, and damages to the residue by the jury will be discussed at the latter part of this opinion. On the whole, we cannot say that the verdict evinces passion, prejudice or sinister motive, and the judgment as to A. H. Cook's land will be affirmed. It must be remembered that the trial court saw and heard the witnesses, and was in much better position to pass upon the motion to set aside the verdict on the sole ground stated, than this court, which only has before it a lifeless record.

G. W. Cook. Land actually taken 4.9 acres.

This tract of 150 acres was purchased by G. W. Cook from

his brother a short time before the construction began at $53.00 per acre, and is assessed at $35.00 per acre for taxation.

The McDonalds (witnesses in the A. H. Cook case) fix the value of the land taken at $300 per acre and damages to the residue at $500 or $600. Both witnesses say their examination of this tract and the damage done was superficial. Bruce McDonald says that it looked as if the creek had formerly spread over the bottom, but that the channel now built would probably confine this water. Engineer Street says that about one acre taken was creek bed. He says there was very little of the bottom land taken, and of little value; and that by cutting the channel for the water three to five feet deep, the water was confined, and 2.16 acres redeemed to the landowner; and Painter testified that G. W. Cook was benefitted specially by the construction. The evidence of the McDonalds as to this tract is subject to the same observation made in the A. H. Cook case. Under this evidence the jury could have awarded less damages, but after viewing the land taken and considering the damages to the residue from that view they have awarded $375. We can see no good basis for convicting the jury of bias, prejudice or ulterior motive; and the judgment as to G. W. Cook will be affirmed.

### J. M. Cook tract. Land taken 4.2 acres.

This tract consists of 150 acres, assessed for taxation at $35.00 an acre. The McDonalds, above named, valued the land taken at $300 per acre and $800 damages to the residue. Their evidence is similar in character to their evidence in the A. H. Cook matter. L. D. Harless, one of defendants, valued the land taken at $500 per acre, mostly for agricultural purposes; and damages to the residue of $1,000. He bases his damages to the residue on the fact that there was a narrow strip cut off lying between the road and the hill and school house (how much does not appear) which was made almost useless for farming purposes. J. M. Cook valued the land taken at $500 per acre for farming purposes, and estimated damages to residue at $1,000, based on the alleged destruction of a spring, estimated at $500, and fencing thought necessary to build at $255. It appears that the road as constructed follows very closely the

toe of a steep hillside, and very little of level land was taken. No one attempts to estimate the amount of level land taken. The engineer designates it is a minimum. The jury awarded $475. The owner said he did not know the market value of the land taken, and declined to express an opinion. The Painter witnesses fixed the average value of this tract at from $60.00 to $75.00 per acre. Here is the usual wide discrepancy in opinion as to values. The jury of twelve viewed the premises, and it is well settled law that what they saw on the view taken in consideration with their own knowledge and experience entitles them to fix the award both by evidence and view. *Guyandotte, etc* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521. This does not evince passion, prejudice or sinister motive, and the judgment as to J. M. Cook must be affirmed.

L. D. Harless. One-fourth acre taken.

This tract contains about eight acres, assessed at $35.00 per acre. The improvements thereon are assessed at $700. The original right of way, included about seven feet of the land occupied by the dwelling house, but on the trial, the plans were agreed to be amended so as to leave the ground on which the house stood intact, and not included in the right of way, the line of the right of way being just outside the building. The road as actually constructed leaves a space of 12 feet or more level land between the house and the edge of the cut, which cut is two feet on the side next to the house, while the bank of the cut on the opposite side (the width of the road lying between) is 26 feet. Hence, the principal portion of the land taken was from a rather steep hillside. The McDonalds, above named, valued the one-fourth acre tract taken at $500, damages to the house of $3,000, and damages to the residue of the land at $1,000. They admit on cross-examination that their examination of the land, and their judgment as to damages to the residue, was based upon a superficial inspection of the premises while passing on the road. L. D. Harless, the owner, is the only other witness as to the value of his land taken and damages to the residue. He says the highest value for the land taken is its use for fruit and vegetables, and fixes the value of the one-fourth acre at $1,000. He declined to

value his land at $4,000 for fruit and vegetables, but thought this particular one-fourth acre was worth $1,000. It will be observed that the major portion actually taken was on a steep hillside. He testified that on this one-fourth acre taken he had "four apple trees and peach trees, plums and two pears", which were destroyed. He valued the apple trees at $25.00 each, the peach trees at $20.00, the plum trees at $15.00 each, and the two pears at $15.00. The evidence does not show how many peach and plum trees were on the one-fourth acre. Counsel for Harless refers us to a map of the eight acres showing the right of way thereon, made by Stone, a witness for Harless, on which map there is a legend of "4 apple trees, 10 peach trees, 6 plum trees", but the map does not show where they were planted on the eight acres. If all these trees were on the one-fourth acre, they must have been rather close together. Harless was asked if he claimed $425 for the fruit trees by his counsel, to which he made no answer. The evidence as to the item of damages for the fruit trees is indefinite. There is no bottom land involved. The road enters the land through a bluff, crosses a ravine over a fill, or embankment, thence through the property on a bluff, the major portion of the excavation being against the hillside. Harless says his house is a total loss because of the dust which makes it uninhabitable at times of dust. The house is a two-story frame building of eight rooms and had stood there fourteen years at an original cost of $3,000. He estimates his total damage (including the one-fourth acre taken at $1,000) to be $5,500. He says he paid $500 about five years ago for a small strip of eighty feet for a house seat, part of which was taken by the road, and that there is no other available house seat on his tract. He also claims that his access to the other portions of his land is cut off and to build a road for access thereto would cost $100. The jury awarded him $340.

While the number of fruit trees destroyed is indefinite, as well as their size and productiveness, about which there is no evidence, the value placed thereon by Harless is not questioned. The jury could not see the trees because they were destroyed. A conservative estimate would place the value of the trees at $200, and the cost of the road to segregated portions

of the land being unquestioned, the damage for these two items would be $300. This would leave only $140 for the value of the land taken and the damage to the dwelling. While the jury, by reason of its view, was warranted in not accepting the evidence of total loss to the house by reason of the dust (which would be excruciatingly offensive in the dusty periods of the year, to be obviated when the road is hard-surfaced) yet it could not find under the evidence that there was no damage at all from that cause. Moreover, it must be remembered that the land taken runs very close to the dwelling and although 12 feet nearest the house has not been used by the actual construction, yet it may be used, which right would lessen the market value as a residence. Who would want to buy a dwelling liable to a highway excavation under its eaves? The evidence strongly preponderates against the amount of the verdict; and the judgment and verdict as to L. D. Harless will be set aside, and a new trial awarded.

The law governing condemnation proceedings in this state and applicable to these cases is fairly well stated. The value of land taken and damages to the residue is always a matter of opinion, and nearly every case, as in these cases, the opinion of the witnesses are at wide variance. The jury is not bound to decide on opinion evidence only. And where the jury has viewed the land taken and the damages to the residue, they may use their own knowledge and experience, and fix the value and damages both by knowledge obtained from the view used in connection with the other evidence. *Guyandotte Valley Ry. Co.* v. *Buskirk*, 57 W. Va. 417. Hence, the rule is deducted that verdicts in condemnation suits will rarely be set aside for the reason that compensation is nearly always a matter of judgment on the part of the jury, resting in part only upon opinion evidence, where there has been a view by the jury. *Guyandotte, etc.* v. *Buskirk, supra; B. & O. Ry. Co.* v. *Bonafield's Heirs*, 79 W. Va. 287, 90 S. E. 868.

The true test of damages to the residue is the difference in value immediately before and immediately after taking, not charging the owners with general benefits, but taking therefrom special benefits, if any be shown. The witnesses did not testify as to values before and after the taking, but the court

instructed the jury to apply the true test, and where the evidence as to damages has been fully heard, and the jury has made a view, a verdict will not be disturbed on that ground, unless it is clear that injury has resulted. *Adams* v. *County Court*, 109 W. Va. 421.

There is a wide difference between the awards made by the commissioners, and the verdicts of the jury. None of the commissioners were witnesses to explain their awards nor does it appear what evidence was before them on which they based their awards. At the time of the awards the work had only been projected, and the actual damages may have appeared greater than when the work was actually done and the damges reasonably demonstrated by the finished improvement. The commissioners' award cannot control the verdicts, else there would be no use to appeal to a jury.

We affirm the judgments as to A. H. Cook's heirs, G. W. Cook and J. M. Cook; but reverse the judgment and set aside the verdict as to L. D. Harless.

*Affirmed in part; reversed in part.*